STATE OF CONNECTICUT *v.* MOSES E. GOOCH, JR.

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and WRIGHT, Js.

Argued November 4, 1981—decision released January 5, 1982

*Herbert Watstein,* with whom, on the brief, was *Julius Watstein,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Kevin P. McMahon,* assistant state's attorney, and *John F. Cronan,* deputy assistant state's attorney, for the appellee (state).

PARSKEY, J. The jury convicted the defendant of the charge of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) for stabbing the complainant with a knife. In his appeal the defendant has sought to raise five issues. Four of these are: (1) restriction of cross-examination, (2) exclusion of evidence pertaining to justification, (3) denial of the defendant's motion for mistrial, and (4) denial of the defendant's motion for acquittal.

The defendant seeks, as a fifth issue, to challenge certain portions of the court's charge to the jury. Conceding his failure to file an appropriate request to charge or to take a proper exception to the charge as required by our rules; Practice Book §§ 852 and 854; the defendant relies on *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), as a basis for pressing this issue for the first time on appeal. We find this reliance to be totally without foundation. The *Evans* rule is designed to protect fundamental constitutional rights. It deals with substance, not labels. Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender. If a word to the wise will do it, then suffice it to observe that the *Evans* trial court bypass to this court is a narrow constitutional path and not the appellate Champs-Elysees.

The jury could have found the following facts: As described by the victim, Paul Fachini, whose nick-

name was Nilo, the knifing incident occurred during the late hours of April 27 and the early morning hours of April 28, 1979, at the Hideaway Disco in Bristol. Fachini arrived at the Hideaway Disco at some time close to midnight with a friend, Timothy Kearney. While Kearney ordered drinks, the defendant, who was nicknamed "Skeet," approached Fachini and asked him why he thought he was "so bad." The defendant and Fachini began to argue orally about whether the latter was "bad" or not, but Fachini told the defendant that he didn't want any trouble. Fachini then said, "Let's take it outside." When they reached a hallway at the Hideaway Disco, Fachini admitted holding the defendant up against the wall, at the same time as he was telling the defendant that he didn't want any trouble. At this point, the bouncer broke up the confrontation and said, "Take it outside." Fachini did not hit the defendant during the hallway confrontation; he did not display any weapon, nor did he have any weapon on his person.

Once outside the Hideaway, the defendant and Fachini were standing facing each other when Fachini saw a knife in the defendant's right hand. He told the defendant, "You don't need a knife." Fachini estimated the blade of the knife to be between four and six inches. After a crowd of between twenty-five and thirty people had gathered, a friend of Fachini's in the back of the crowd yelled to him and when Fachini looked to see who had yelled, the defendant cut Fachini with the knife. The knife wound inflicted by the defendant left a scar of approximately four inches from near Fachini's ear to under his chin. Before being cut, Fachini made no move toward the defendant.

Fachini's companion, Timothy Kearney, testified that he and Fachini had been drinking beer at various establishments during the night of April 27, 1979, and that they arrived together at the Hideaway Disco at about 12:30 a.m. While Kearney went to the service bar to get drinks for both of them he overheard "Skeet" asking Fachini whether he thought he was "bad" or not. Later, outside the Hideaway, Kearney saw Fachini and the defendant facing one another and also saw a knife in the defendant's right hand. He then saw a boy named Bane walk up to Fachini and say, "Fire him up, Nilo." Kearney saw that when Fachini turned his head to look at Bane, the defendant sprang at Fachini from about two or three feet away and knifed him in the face.

Douglas Jackson was the doorman and in charge of keeping the peace during the night of April 27-28, 1979, at the Hideaway Disco. Jackson first saw Fachini as he was lifting the defendant off the floor with his hands on the defendant's neck. He and another employee broke up the argument and told the participants to take it outside. Jackson then saw Fachini leave the Hideaway first, followed by the defendant. He saw Fachini with his hands by his side and the defendant with a knife in his hands. Fachini said something to the defendant but did not do anything. Jackson then heard somebody say, "Nilo," and saw Fachini look toward the source of the remark and, as he looked, saw the defendant come up and stab Fachini in the face. Jackson also did not see any weapon on Fachini's person. Fachini was just standing there when he was stabbed.

Jackson grabbed the defendant after the stabbing because the defendant was wild, in a frantic state,

and still trying to get at Fachini. When the defendant calmed down, Jackson released him, whereupon the defendant ran away.

The defendant admitted to cutting Fachini, but claimed that Fachini had a gun and that the defendant, knowing that, acted only when Fachini came toward him.

## I

The defendant claims that the court unduly restricted his right of cross-examination (a) by excluding evidence of the victim's violent acts, (b) by denying him permission to have the complainant and the defendant stand side by side, and (c) by excluding certain questions relating to the victim's intoxication.

The defendant, citing *State* v. *Miranda,* 176 Conn. 107, 405 A.2d 622 (1978), challenges the trial court's exclusion of evidence of a specific act of violence committed by the complainant. The court's ruling was correct. In *State* v. *Miranda,* we held that "in a homicide prosecution where the accused has claimed self-defense, the accused may show that the deceased was the aggressor by proving the deceased's alleged character for violence." Id., 114. If we assume, without deciding, that this holding applies to assault prosecutions; see 1 Wharton, Criminal Evidence (13th Ed.) § 236; the defendant's reliance on *State* v. *Miranda,* is misplaced. It is not enough to show the relevancy of the claimed character trait. It must also appear that the proffered proof of that trait is admissible. Except where character is directly in issue, a person's violent character may not be established by evidence of specific acts. *State* v. *Miranda,* supra, 112. Such evidence of specific instances of conduct is excluded not because

it is unconvincing, but because it has the potential to surprise, to arouse prejudice, to multiply the issues and confuse the jury, and to prolong the trial. Id.; *Richmond* v. *Norwich,* 96 Conn. 582, 597, 115 A. 11 (1921).

The court's denial of the defendant's request that the jury be permitted a visual demonstration of the comparative sizes of the complainant and the defendant by having them stand back to back was not erroneous. The court, in its discretion, may permit in-court experiments and demonstrations if they will aid the fact-finder. *State* v. *Leopold,* 110 Conn. 55, 67, 147 A. 118 (1929); Tait & LaPlante, Connecticut Evidence § 9.6. The court's ruling in this case did not constitute an abuse of that discretion because the jury already had before it evidence of comparative body sizes. There was testimony that the complainant was six feet tall and weighed 180 pounds. During much of the trial, the complainant and the defendant were both in the courtroom at the same time, during which period the jury had an ample opportunity to draw appropriate inferences from their visual observations.

The assault took place outside a disco establishment. The complainant and his friend, Timothy Kearney, had been inside the disco just before the assault. On direct examination, the complainant testified that Kearney had started to go to the service bar to order drinks for both of them when the events which ultimately led to the assault occurred. On cross-examination, the defendant was precluded from asking the witness why he had not ordered his own drink. The defendant claimed that he wanted to show that the reason that Fachini did not order his own drink was that he was concerned that he would not be served because of his intoxication. The

court excluded the questions as immaterial and speculative and was correct in doing so. While relevant evidence is generally admissible, the trial judge has a certain amount of discretion in excluding such evidence; "matters likely to mislead a jury, or to be misused by it, or to unnecessarily complicate a case, or of slight, remote, or conjectural significance, ought not to be admitted." *State* v. *Kelly,* 77 Conn. 266, 269, 58 A. 705 (1904). Fachini, the victim of the assault, had already testified that between 7:30 in the evening and midnight when he arrived at the Hideaway, he had consumed fourteen bottles of beer and two scotch and water drinks at various places. He also testified that he had nothing to drink at the Hideaway because Kearney did not have enough time to order the drinks before the confrontation and assault occurred. When asked why he was not ordering his own drinks, Fachini replied, "I don't know. He [Kearney] went up and ordered them." Shortly thereafter the defendant attempted to pursue the excluded query. While Fachini's degree of inebriation was relevant, the quantity of alcohol admittedly consumed by him would have permitted the jury to conclude that he was obviously intoxicated. The proffered question would not only have added little or nothing to the inquiry but, even worse, would have involved the jury in a will o' the wisp search for a logical connection between Kearney's ordering drinks and Fachini's state of inebriation.

## II

Kevin Trotman was called as a witness for the defendant. Trotman was with the defendant inside the disco immediately before the alleged offense. He testified that he observed the complainant choke the

defendant until the bartender broke up the fight suggesting that the two take the argument outside. Trotman also noticed a bulge in the complainant's pocket which looked to him like a weapon, and he overheard some people in back of him talking about it. Although he saw the complainant and the defendant go outside, Trotman did not go outside with them. When asked what he heard the crowd say, Trotman answered, "Look at him," when Trotman was interrupted by an objection. The court sustained the objection. The defendant made no offer of proof. Later, the defendant testified that he saw what looked to him like a gun in the complainant's pocket.

The defendant gains nothing from assigning as error the objection sustained by the court which excluded the hearsay statements made by the crowd. If the complete sentence were to the effect that the complainant had a weapon in his pocket, Trotman had already testified to the substance of it. The statement would have been merely cumulative and therefore within the trial court's discretion to exclude. *State* v. *Jones,* 132 Conn. 682, 683, 47 A.2d 185 (1946); Tait & LaPlante, Connecticut Evidence § 8.1. The defendant himself also testified to the same effect. On the other hand, if it is the defendant's claim that the statement contained more information such that, having been made in the defendant's hearing, it might have had an effect on his state of mind and to that extent would have supported his claim of self-defense, this claim is not reviewable in the absence of an offer of proof. *Lavieri* v. *Ulysses,* 149 Conn. 396, 405, 180 A.2d 632 (1962); *Seney* v. *Trowbridge,* 127 Conn. 284, 290-91, 16 A.2d 573 (1940); see *Fahey* v. *Clark,* 125 Conn. 44, 48, 3 A.2d 313 (1938).

## III

On cross-examination, the complainant's friend, Timothy Kearney, conceded that from what he heard about the defendant, he did not like him. The next question was, "I mean from your own knowledge right now, today," to which Kearney responded, "Well, I heard he stabbed a lot of people." The defendant's motion for a mistrial was denied, and the court cautioned the jury not only to disregard the statement but also that it was to play no part in their deliberations.

"The general principle is that a mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial." *State* v. *Turcio,* 178 Conn. 116, 143, 422 A.2d 749 (1979). In view of the wide discretion in the court in passing on motions for mistrial; id.; and of the immediate curative instruction to which no exception was taken, we are disinclined to conclude that the court's denial of the motion constituted an abuse of discretion in this case.

## IV

Finally, the defendant challenges his conviction on the ground of the insufficiency of the evidence. The essential elements of assault in the first degree; General Statutes § 53a-59 (a) (1); are that the accused (1) with the intent to cause serious physical injury (2) to another person (3) caused such injury to such person (4) by means of a dangerous instrument. Reviewing the evidence as favorably as possible with a view toward sustaining the verdict, and then deciding whether the verdict is one which jurors acting reasonably could have reached; *State*

v. *Jeustiniano,* 172 Conn. 275, 281–82, 374 A.2d 209 (1977) ; we conclude that the conviction must stand. Indeed, the defendant does not dispute the basic facts, especially the cutting incident. His argument is that his action was justified as a matter of self-defense. Whether there was any basis for this defense depends in the first instance on the credibility of the defendant and of his witnesses. It is obvious from the guilty verdict that the jury found no factual basis for this claim. In the absence of any factual basis for justification, the case against the defendant was overwhelming.

There is no error.

In this opinion the other judges concurred.