STATE OF CONNECTICUT *v.* EARL SMART
(12546)

O'CONNELL, LAVERY and SCHALLER, Js.

Argued October 31, 1994—decision released March 28, 1995

*Deborah Del Prete Sullivan,* assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Joseph Harry,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, after a jury trial, of sale of a narcotic substance in violation of General Statutes § 21a-278 (b), of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b) and of conspiracy to sell a narcotic substance in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b).

On appeal, the defendant claims that (1) his convictions of possession of narcotics with intent to sell and sale of narcotics, both in violation of General Statutes § 21a-278 (b), violate his double jeopardy rights, (2) the trial court incorrectly admitted the statement of a nontestifying coconspirator where the defendant claims no evidence of a conspiracy existed, (3) the trial court incorrectly instructed the jury that it could consider the statement of the nontestifying coconspirator even if it determined that the statement was made before the defendant participated in the conspiracy, and (4) the trial court incorrectly instructed the jury regarding the overt act element of conspiracy. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The Bridgeport police received information that

narcotic sales were occurring on Sanford Place in Bridgeport. Thereafter, members of the narcotics and vice division of the Bridgeport police department were assigned to attempt a "buy-bust" operation in that general area. In a buy-bust operation, an undercover police officer attempts to purchase narcotics from a suspected drug dealer and, after a purchase is made, backup units immediately proceed to the area and arrest the suspected dealer.

On May 26, 1992, Officer Warren DelMonte was assigned to attempt to purchase narcotics in the general area of 52 Sanford Place. Detective Ralph Villegas was part of the backup team, and was assigned to position his vehicle so that he could observe the transaction. The other members of the team, Detectives Richard DeRiso, Derwin Hill, Daniel Domkowski and Sergeant Joseph Convertito, were assigned to back up DelMonte should he need protection and, after DelMonte purchased the narcotics, to arrest the dealers.

Before the operation began, DelMonte was searched to make sure that he had no contraband or articles that would indicate that he was a police officer. Villegas then provided him with a $20 bill with which to make the narcotics purchase. The $20 bill was photocopied before they left the police station.

The team left the police station at approximately 3:30 p.m. Villegas was first to arrive in the area and parked his vehicle on Vine Street. From his location, he could see a section of Sanford Place that was not heavily trafficked. Villegas was able to monitor DelMonte's actions with binoculars.

At 3:40 p.m., DelMonte arrived and parked his vehicle in the area of 70 Sanford Place, near the middle of the block. He got out of his car and observed three men standing near a gray car across the street. These three men were later identified as the defendant, Den-

ton Cleveland and Barrington Wilson. As he walked across the street toward the three men, Cleveland asked him, "How many do you want?" DelMonte held up four fingers and replied, "Four." Wilson then walked approximately twenty feet away and stopped in the middle of the street. At the same time, the defendant stepped onto the sidewalk. DelMonte began to follow the defendant, but Cleveland instructed him to stop. Shortly thereafter, Cleveland instructed Del-Monte to follow the defendant. The two proceeded to a hollow steel pole connected to a chain-link fence. The pole had an opening on top. The defendant reached into the pole and pulled out a medium size clear plastic bag. Inside this bag were several smaller bags containing a white powdery substance. The defendant pulled out four of the smaller bags, each containing a white powdery substance, and handed them to DelMonte. In exchange, DelMonte gave the defendant the $20 bill that had been photocopied. The defendant then handed DelMonte an extra bag and said, "This one's on me." DelMonte put the bags he had purchased in his pocket, returned to his car and drove away. As he left, he broadcast a description of the three suspects over his car radio.

After DelMonte drove away, the backup team converged on the area to arrest the suspects. When they arrived, they observed the three suspects standing by the gray car. Wilson fled when he saw the police and was not caught. The defendant and Cleveland, however, were arrested at the scene. A search of the area produced no additional narcotics. At the police station, the defendant was found to be in possession of the $20 bill that had been photocopied.

DelMonte turned over the five bags he had purchased to Villegas. A field test of one of the bags produced a positive result for the narcotic cocaine. Subsequently, the five bags were taken to the state toxicology labora-

tory for additional testing where it was determined that the total weight of powders from all five bags was 270 milligrams. The test results further revealed that the five plastic bags contained cocaine.

## I

In the defendant's first claim, he argues that his convictions for the sale of a narcotic substance and for possession of a narcotic substance with intent to sell, both in violation of General Statutes § 21a-278 (b), violated his right against double jeopardy under the federal and state constitutions. The defendant cannot prevail in his double jeopardy claim for three reasons: (1) the defendant's constitutional right against double jeopardy was not violated; (2) the merger doctrine is inapplicable; and (3) the actual evidence test is inapplicable.

The defendant's claim is unpreserved as he did not raise the claim at trial. He now argues that his unpreserved claim is entitled to appellate review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). A defendant can prevail on an unpreserved claim only if "all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. The defendant's claim fails to satisfy the third prong of *Golding*.

## A

The double jeopardy clause embodies three protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction.

And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The defendant's claim in the present case rests on that aspect of double jeopardy that prohibits multiple punishments for conviction of a single offense. In this context, double jeopardy protection " 'is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' " *State* v. *Delgado,* 19 Conn. App. 245, 250, 562 A.2d 539 (1989). Thus, the determinative question is whether the legislature intended the offenses at issue to be separate. Id., 251. "The issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Rawls,* 198 Conn. 111, 120, 502 A.2d 374 (1985).

In order to prevail on his claim, the defendant must show (1) that the charged offenses arose out of the same act or transaction, and (2) that the two convictions are in reality the same offense. Multiple punishments are forbidden only if both conditions are met. *State* v. *Snook,* 210 Conn. 244, 264, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Boucino,* 199 Conn. 207, 222, 506 A.2d 125 (1986).

For the first prong of the analysis of the defendant's claim, it is necessary to review the information and the bill of particulars. In this case, the first count of the amended information alleged that the defendant sold cocaine to an undercover police officer on May 26, 1992, at approximately 3:40 p.m., in the area of 60 Sanford Place in Bridgeport. The second count alleged that the defendant possessed cocaine with the intent to sell at the same time and place as is alleged in the first count. As the offenses were alleged to have been committed at the same time, on the same date and in the same

location, the charged offenses arose out of the same transaction. See *State* v. *Devino*, 195 Conn. 70, 74, 485 A.2d 1302 (1985).

With regard to the second prong of the analysis, the defendant must demonstrate that the two convictions are in reality the same offense. "The test for determining whether two charged offenses constitute the same offense for double jeopardy purposes was set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932)." *State* v. *Woodson*, 227 Conn. 1, 8, 629 A.2d 386 (1993). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, supra, 304. The *Blockburger* analysis focuses on the statutory elements of the two crimes and the charging documents, *and precludes examination of the evidence actually presented at trial. State* v. *McCall*, 187 Conn. 73, 90, 444 A.2d 896 (1982); *State* v. *Goldson*, 178 Conn. 422, 424, 423 A.2d 114 (1979). If each crime requires proof of a fact that the other does not, the offenses are not the same under *Blockburger*, "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli* v. *United States*, 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975).

Pursuant to § 21a-278 (b), an offense is committed by "[a]ny person who [1] manufactures, [2] distributes, [3] sells, [4] prescribes, [5] dispenses, [6] compounds, [7] transports with the intent to sell or dispense, [8] possesses with the intent to sell or dispense, [9] offers, [10] gives or [11] administers to another person any narcotic substance . . . ." In count one of the amended information, the defendant was charged with the sale of a narcotic substance in violation of § 21a-278 (b). In

count two of the amended information, the defendant was charged with possession of a narcotic substance with intent to sell in violation of § 21a-278 (b). Applying the *Blockburger* test to these two offenses clearly establishes that they are not the same offense, nor do they stand in relation of greater and lesser included offenses. It is clear that each offense requires proof of a fact that the other does not.

In continuing this analysis, the holdings in *State* v. *Brown*, 163 Conn. 52, 301 A.2d 547 (1972), *State* v. *Devino*, supra, 195 Conn. 70, and *State* v. *Hart*, 23 Conn. App. 746, 585 A.2d 103 (1991), rev'd in part, 221 Conn. 595, 605 A.2d 1366 (1992), are significant. In *Brown*, our Supreme Court held that the trial court properly refused to instruct that possession of heroin was a lesser included offense of the sale of heroin. *State* v. *Brown*, supra, 63. The court reasoned that the sale of heroin does not necessarily require possession and thus the two offenses are not greater and lesser offenses. Id., 62–63. Thirteen years later in *Devino*, the court, relying on *Brown*, held that the defendant's convictions for the sale of cocaine and for the illegal possession of cocaine, arising from the same transaction, did not violate double jeopardy principles. *State* v. *Devino*, supra, 75. The court reasoned that "[b]ecause one may possess narcotics without selling them, a conviction for [the] illegal sale of narcotics requires proof of a fact that a conviction for illegal possession does not. Because one may either possess narcotics legally yet sell them illegally or sell narcotics without possessing them; see *State* v. *Brown*, [supra, 62–63]; a conviction for illegal possession of narcotics requires proof of a fact that a conviction for illegal sale does not." *State* v. *Devino*, supra, 75. In *Hart*, this court followed the same rationale in holding that the defendant's convictions for possession and sale of

a narcotic substance, arising from the same transaction, did not violate the double jeopardy clause. *State* v. *Hart*, supra, 758.

The holdings of these cases apply here. The offense of possession of a narcotic substance with intent to sell requires proof that the defendant possessed a narcotic substance. There is no such requirement for the offense of the sale of a narcotic substance. *State* v. *Devino*, supra, 195 Conn. 75; *State* v. *Hart*, supra, 23 Conn. App. 758. Likewise, the offense of the sale of a narcotic substance requires proof of a sale. There is no such requirement for the offense of possession with intent to sell. *State* v. *Devino*, supra, 75. Therefore, under *Blockburger* the two offenses are not the same, nor do they stand in relation of greater and lesser included offenses.

Although the *Blockburger* test is satisfied, there remains the question of legislative intent. " 'The *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history.' " *State* v. *Greco*, 216 Conn. 282, 292, 579 A.2d 84 (1990). Where there is no clear indication of a contrary legislative intent, however, the *Blockburger* presumption controls.

This statute does not indicate, on its face, that it was the intent of the legislature to prohibit multiple punishments for separate convictions of (1) possession of a narcotic substance with intent to sell and (2) the sale of the same narcotic substance. In this case, as in *State* v. *Nixon*, 231 Conn. 545, 651 A.2d 1264 (1995), the legislative history of the statute does not indicate that the legislature intended that the two crimes be considered the same offense for double jeopardy purposes. The defendant appears to suggest that because the two offenses are set forth in a single subsection, rather than in separate statutes, it could be inferred that multiple

punishments are prohibited. This argument was rejected in *State* v. *Tweedy*, 219 Conn. 489, 495–96, 594 A.2d 906 (1991), and *State* v. *Woodson,* supra, 227 Conn. 11–12.

In *Tweedy*, where the defendant abducted and restrained a single victim, intending both to sexually assault her and to rob her, the court found no double jeopardy violation for the defendant's convictions and sentences on two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (B). *State* v. *Tweedy,* supra, 219 Conn. 495–96. Likewise, in *Woodson*, where the defendant set a single fire to a single building, the court found no double jeopardy violation for the defendant's convictions and sentences on two counts of arson in the first degree in violation of General Statutes § 53a-111 (a) (3) and (4). *State* v. *Woodson,* supra, 227 Conn. 11–12. As the court in *Woodson* noted: "[T]he mere position of statutory language in the hierarchy of sections and subsections in the penal code does not control whether such language creates a separate offense for the purpose of double jeopardy analysis. The defendant's assertion is in fact contradicted by our decision in *Tweedy*, wherein paragraphs (A) and (B) of § 53a-92 (a) (2) were regarded as separate crimes for double jeopardy purposes *even though they occupied the same statutory section.* If two subparagraphs in the kidnapping statute can be regarded as separate crimes, it follows apodictically that subdivisions (3) and (4) of § 53a-111 (a) can likewise be regarded as separate crimes for double jeopardy purposes despite their enactment as subdivisions of the same statute.

"Ultimately, whether statutory provisions are separate crimes meriting separate punishments for the purpose of double jeopardy analysis turns on whether the legislature intended them to be separate crimes. Although the location of statutory provisions in the

penal code may be some evidence of legislative intent, the language of the provisions rather than where they are situated is more indicative of whether the legislature intended to create separate crimes and separate punishments." (Emphasis added.) Id.

Clearly our Supreme Court has held that whether the statutory alternatives are set forth in separately numbered subdivisions or within the same subdivision they can be treated as completely distinct and separate offenses. *State* v. *Chapman*, 227 Conn. 616, 621, 632 A.2d 674 (1993);[1] *State* v. *Belton*, 190 Conn. 496, 500–501, 461 A.2d 973 (1983).

B

The defendant claims alternatively that, pursuant to the common law merger doctrine, his conviction for possession of a narcotic substance with intent to sell merged into his conviction for the sale of the same narcotic substance.

The common law doctrine of merger dictates that when a defendant's criminal act constitutes both a felony and a misdemeanor, and where there is identity of time, place and circumstance involved in the criminal act, the misdemeanor offense merges into the felony offense. *State* v. *Andrew*, 108 Conn. 209, 215–16, 142 A. 840 (1928). Under this doctrine, however, a felony does not merge with a felony, nor a misdemeanor with a misdemeanor. Id., 216. Here, the offenses of possession of a narcotic substance are of the same grade, and, therefore, this early common law doctrine would be inapplicable. See *State* v. *Setter*, 57 Conn. 461, 469, 18 A. 782 (1889).

The merger doctrine may also have application to lesser included offenses. *State* v. *Redmond*, 10 Conn.

---

[1] This case was reargued and the trial court affirmed on other grounds. *State* v. *Chapman*, 229 Conn. 529, 643 A.2d 1213 (1994).

Sup. 272, 274–75 (1942). As our Supreme Court observed: " 'The principles upon which the doctrine of merger seems to rest are that the offense merged is lesser than the one in which it is merged, and that the ingredients of the smaller one are so identical with the ingredients of the larger that when both have been committed they cannot in reason be separated; so that to punish an accused in such a case for both offenses would be in effect to punish the same act twice.' " *State* v. *Andrew*, supra, 108 Conn. 216, quoting *State* v. *Setter*, supra, 57 Conn. 468. In this case, the offenses of possession of a narcotic substance with intent to sell and the sale of a narcotic substance are of the same grade, and thus not lesser and greater offenses. Moreover, each offense contains an element that the other does not. *State* v. *Devino*, supra, 195 Conn. 75.

More recently, our Supreme Court addressed the merger doctrine as it relates to kidnapping offenses. In *State* v. *Amarillo*, 198 Conn. 285, 503 A.2d 146 (1986), the defendant was convicted of kidnapping in the first degree and sexual assault in the first degree. The defendant argued that the court should recognize the merger doctrine as precluding conviction for a kidnapping that was "merely incidental" to a sexual assault. The court refused to approve the doctrine. Id., 304. Likewise, our Supreme Court has repeatedly rejected the merger doctrine in other cases. See *State* v. *Johnson*, 185 Conn. 163, 177, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); *State* v. *Briggs*, 179 Conn. 328, 338, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 10 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *DeWitt*, 177 Conn. 637, 641, 419 A.2d 861 (1979); *State* v. *Lee*, 177 Conn. 335, 343, 377 A.2d 263 (1979); *State* v. *Chetcuti*, 173 Conn. 165, 170, 377 A.2d 263 (1977). Instead, the court has held that " '[w]here the elements of two or more distinct offenses are combined in the same act, prose-

cution for one will not bar prosecution for the other.' "
*State* v. *Amarillo,* supra, 305. "A defendant may be
convicted of two crimes that derive from the same con-
duct . . . ." Id. The merger doctrine is inapplicable
to the defendant's claim.

## C

Alternatively, the defendant claims that his convic-
tions for both possession of a narcotic substance with
intent to sell and sale of the same narcotic substance
violated the actual evidence test.

As discussed previously, the double jeopardy clause
protects against successive prosecutions for the same
offense and against multiple punishments for the same
offense in a single trial. *State* v. *Greco,* supra, 216 Conn.
290. The *Blockburger* test was developed specifically
to be used, in cases like this, for analyzing double jeop-
ardy claims regarding multiple punishments for the
same offense imposed in a single prosection. *Grody* v.
*Corbin,* 495 U.S. 508, 516, 110 S. Ct. 2084, 109 L. Ed.
2d 548 (1990). As the issue is essentially one of statu-
tory construction, the inquiry is limited to examining
the relevant statutes, the information, and the bill of
particulars, and not the evidence presented at trial.
*State* v. *Greco,* supra, 291.

The actual evidence test, unlike the *Blockburger* test,
examines the evidence presented during the trial. The
test has been used predominately in successive prose-
cution cases. See *State* v. *Lonergan,* 16 Conn. App. 358,
548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677
(1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110
L. Ed. 2d 267 (1990). "Successive prosecution cases
involve the core values protected by the double jeop-
ardy clause. Successive prosecutions implicate a com-
ponent of double jeopardy protection not implicated in
single prosecutions of joined charges such as those
involved in *Blockburger.* It protects not only against

multiple punishments but also against multiple trials for the same offense. . . . When the issue is purely one of multiple punishments, the right to be free from vexatious proceedings simply is not present. *The interest of the defendant in single trial prosecutions is in not having more punishment imposed than that intended by the legislature.* When the issue is one of multiple trials, the double jeopardy clause vindicates principles of finality and repose of former judgments and of fundamental fairness that simply are not involved in a single prosecution of joined charges. Basically, it insures that having once 'run the gauntlet' of a criminal trial to either a judgment of conviction or acquittal, a person ought not to be required to run essentially the same gauntlet again.

*"This rationale leads to our conclusion that the test for determining whether the 'same offense' is involved in successive prosecution cases should be one more protective of criminal defendants than is the relatively strict analytical* Blockburger *test that is decisive in single prosecution cases.* We therefore adopt the actual evidence test in successive prosecution cases because it is a standard with more practical flexibility than the *Blockburger* same evidence test, as it directs a pragmatic inquiry into whether the evidence actually used to establish a conviction in the first prosecution is identical to that which will be used to establish a conviction in the second prosecution." (Citations omitted; emphasis added.) *State* v. *Lonergan,* supra, 16 Conn. App. 377–78.

Because the actual evidence test has no application to double jeopardy claims arising from a single prosecution, the defendant's claim must fail. The defendant has failed to demonstrate that his convictions and punishment for possession of a narcotic substance with intent to sell and the sale of the same narcotic substance violated his right against double jeopardy.

## II

The defendant next argues that the trial court improperly failed to prevent, sua sponte, the state from introducing a statement made by Cleveland, a nontestifying coconspirator.

The following facts are relevant to this issue. During the trial, DelMonte, the undercover police officer who purchased cocaine from the defendant, testified, without objection, that after he got out of his car on Sanford Place, as he crossed the street and approached the defendant, Cleveland and Wilson, Cleveland asked him, "How many do you want?" DelMonte testified that on the basis of his experience in narcotics investigations, he believed that Cleveland was asking him how many bags of the narcotics that they were selling he wanted to purchase. DelMonte testified that he held up four fingers and responded, "Four." As the defendant failed to raise a timely objection to testimony about Cleveland's statement at the trial, this claim is unpreserved.

The defendant now argues that the unpreserved claim is reviewable under either the plain error doctrine or *Golding*. The defendant cannot prevail in either argument. First, the plain error review is inappropriate because the claimed error is not so obvious "that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *State* v. *Jeffrey*, 220 Conn. 698, 710, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992).

Second, the defendant's claim fails to satisfy the second prong of *Golding* as the defendant's claim is not of constitutional magnitude. It is not necessary to review all of the prongs of *Golding* as "[i]n the absence of any one of these conditions, the defendant's claim

will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 240. The second prong of *Golding* requires that the claim be of constitutional magnitude, alleging the violation of a fundamental right. Id. By arguing that his right to confrontation was violated when DelMonte testified that Cleveland asked him, "How many do you want?" the defendant has placed a constitutional tag on a nonconstitutional issue and *Golding* review is inappropriate. See *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982).

## III

The defendant next argues that the court improperly instructed the jury regarding its consideration of a statement made by a nontestifying coconspirator.

The following facts are relevant to this issue. During the trial court's charge to the jury, it instructed as follows regarding its consideration of out-of-court statements made by a coconspirator: "You heard testimony in this case that an individual named Denton Cleveland made certain statements to the undercover officer. Denton Cleveland is alleged by the state to be a coconspirator of the defendant in this case, Earl Smart. Any evidence of an out-of-court statement made by an alleged coconspirator shall not be considered by you as against another alleged conspirator, and that would be Mr. Smart in this case, unless (1) you determine from other independent evidence that, at the time the statement was made, a conspiracy to commit a crime existed; (2) you determine the statement was made while the person making the statement was participating in the conspiracy; (3) you determine that the statement was made before or during the time the person against whom it was offered was participating in

the conspiracy; and (4) you determine that such statement was made in furtherance of the objective of the conspiracy.''

As the defendant failed to file a request to charge or take an exception to the charge, this claim is unpreserved. The defendant now argues that this unpreserved claim is reviewable under either the plain error doctrine or *Golding*. The defendant cannot prevail in this claim under either argument. First, as with the defendant's second claim, plain error review is inappropriate here.

Second, the defendant's claim fails to satisfy the second prong of *Golding* as that claim is not of constitutional magnitude. The defendant argues that the trial court's instructions deprived him of his rights to a fair trial, due process of law and equal protection. '' '[W]here the defendant fails to object to an instruction, ''the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut.'' ' '' (Citations omitted.) *State* v. *Sawyer*, 32 Conn. App. 854, 856, 632 A.2d 372, cert. denied, 228 Conn. 911, 635 A.2d 1230 (1993). In this case, the defendant's claim concerns the trial court's instructions to the jury regarding the circumstances in which the jurors could consider an out-of-court statement made by a nontestifying coconspirator. It is not a constitutional issue because it related solely to the jury's consideration of a piece of evidence. The instruction was purely evidentiary in nature. The defendant has placed a constitutional tag on a nonconstitutional issue. *State* v. *Gooch*, supra, 186 Conn. 18. Under these circumstances, review of this claim under *Golding* is inappropriate.

## IV

In the defendant's final claim, he argues that the trial court improperly instructed the jury regarding the overt act element of the conspiracy charge.

The following facts are relevant to this issue. While instructing the jury on the conspiracy offense, the court gave the following charge on the element of an overt act: "The third element that the state must prove beyond a reasonable doubt is that any one or more of the persons who were parties to the agreement committed an overt act pursuant or in furtherance of the conspiracy. It makes no difference which one did the overt act. Nor is it necessary that the defendant himself committed the overt act or that all the conspirators did so. It is sufficient if any one or more of the persons who entered into the illegal agreement committed at least one overt act to further its purpose. An overt act is an open act which manifests or shows that it is part of a design or intent. It must be something more than the mere act of agreeing. It must be something that goes beyond merely making preparations in a general way. *It must be something done after the agreement has been formed which furthers the purpose of agreement.* If it furthers the purpose of illegal agreement, it makes no difference that the overt act itself may not be criminal. Of course, if the overt act itself is criminal, that would be sufficient, but it is not necessary that the act taken by itself be criminal." (Emphasis added.)

The defendant does not argue that the trial court's instruction on the law regarding the element of an overt act was improper. Instead, he argues that the trial court failed to instruct the jury *factually* as to what particular act the state was claiming constituted an overt act. He states that "by not instructing the jury as to what the state claimed constituted the overt act, the trial court did not adequately instruct the jury on the essential element of overt act."

As the defendant failed to take an exception to this instruction, this claim is unpreserved. The defendant now argues that this unpreserved claim is reviewable

under either the plain error doctrine or *Golding*. The defendant cannot prevail in either argument. First, plain error review is inappropriate here for the same reasons it is inappropriate in the second claim.

Second, the defendant's claim fails to satisfy the third prong of *Golding*. The third prong of *Golding* requires the defendant to demonstrate that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant has failed to demonstrate that his constitutional right to due process was violated by the trial court's instructions on the element of an overt act.

" 'On appeal, the adequacy of jury instructions is not determined by the giving of any one instruction, but by examining the instruction as a whole.' " *State* v. *Brown*, 199 Conn. 14, 27, 505 A.2d 690 (1986). The trial court's instruction on the element of an "overt act" was virtually identical to that set forth in 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (2d Ed. 1986) § 5.1, p. 152. The jury was instructed that "an overt act is an open act which manifests or shows that it is part of a design or intent." Additionally, the jury was instructed that an overt act "must be something more than the mere act of agreeing." The jury was instructed that an overt act "must be something that goes beyond merely making preparations in a general way." Finally, the jury was instructed that an overt act "must be something done after the agreement has been formed which furthers the purpose of the agreement." These instructions were sufficient to guide the jurors in their deliberations as to what constitutes an overt act. See *State* v. *McDaniel*, 176 Conn. 131, 136–37, 405 A.2d 68 (1978); *State* v. *Boykin*, 27 Conn. App. 558, 570–72, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

With the court's instructions as to what constitutes an overt act, the jury in this case could review the evidence presented at trial and determine whether an overt act was proven by the state. In the information, the state did not specify that a particular act by one of the conspirators constituted *the* overt act. Nevertheless, had the state done so, it would not have been limited to those acts alleged in the information. *State v. Boykin*, supra, 27 Conn. App. 571.

When instructing the jury, the trial court was not required to list specifically each and every potential overt act that the evidence revealed. Instead, the court properly provided the jury with instructions on assessing whether the evidence revealed an overt act on the part of one of the conspirators. The instructions were fully consistent with the law. Therefore, reviewing the charge as a whole, it is not reasonably possible that the jury was misled by the court's jury charge and the defendant's claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.