STATE OF CONNECTICUT *v.* JOSEPH J. MINCEWICZ
(AC 19210)

Lavery, C. J., and Schaller and O'Connell, Js.

Argued September 12, 2000—officially released August 7, 2001

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Rita M. Shair*, assistant state's attorney, with whom, on the brief, were *Kevin Kane*, state's attorney, and *Lisa Herskowitz*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from his judgment of conviction, following a jury trial, of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1), interfering with an officer in violation of General Statutes § 53a-167a, larceny in the sixth degree in violation of General Statutes § 53a-125a and two counts of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1).

On appeal the defendant claims that (1) conviction of both assault of a peace officer and interfering with an officer constitutes double jeopardy, (2) the trial court improperly interfered with his right to present a defense and (3) the trial court improperly handled his claim of irreparable breakdown in his relationship with his lawyer. We affirm the judgment in part and reverse it in part.

The following facts are relevant to the disposition of this appeal. On February 23, 1998, the defendant was ejected from the Mohegan Sun Casino for "capping a bet," i.e. attempting to place an additional amount on a bet already placed after the patron realizes he will win the hand, but after the time for placing bets has passed. Casino security explained to the defendant that if he returned he would be arrested for criminal trespass.

Despite this warning, the defendant returned on March 3, 1998. He was confronted by three members of the Connecticut state police, Sergeant Maurice Parker, Detective Lance Becker and Trooper Janet Kametz, who took him to their office where he was arrested for criminal trespass.

During the booking process, the defendant became uncooperative and began screaming, shouting obscenities, pushing and shoving. During this melee, the defendant struck Parker in the face. Parker, Becker and Kametz forced the defendant to the floor, handcuffed him and placed him in a chair for the remainder of the process. Kametz and Becker attempted to place the defendant's personal property in an envelope before transporting him to the state police barracks. The defendant again became obstreperous and refused to remove a neck chain and religious medallion. A second struggle

ensued, and the officers were forced to use pepper spray to subdue him.[1]

## I

The double jeopardy claim implicates the second and third counts of the information.[2] The relevant portion of the second count charges that the defendant "caused physical injury to Sergeant Maurice Parker of the Connecticut State Police . . . while Sergeant Parker was acting in the performance of his duties . . . with the intent to prevent [him] from performing his duty."[3] The relevant portion of the third count charges that the defendant "obstructed, resisted, hindered and endangered a member of the Connecticut State Police in the performance of his or her duties."[4]

To prevail on his claim that his conviction on counts two and three violate his constitutional protection against double jeopardy, the defendant must show that (1) the charged offenses arose out of the same act or transaction and (2) the two convictions are for the same offense. *State* v. *Smart*, 37 Conn. App. 360, 365, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187

[1] The defendant returned to the casino again on March 12, 1998, giving rise to one of the charges of criminal trespass and the charge of larceny in the sixth degree. No issue related to those charges is raised on appeal.

[2] The larceny in the sixth degree count and one of the criminal trespass counts pertain to an incident which took place on March 12, 1998. These counts are not involved in the double jeopardy issue.

[3] The second count states: "On or about March 3, 1998, at the Mohegan Sun Casino in Montville, the accused did commit the crime of Assault of a Peace Officer in violation of section 53a-167c (a) (1) of the General Statutes, in that he caused physical injury to Sergeant Maurice Parker of the Connecticut State Police, a reasonably identifiable police officer, while Sergeant Parker was acting in the performance of his duties, by striking Sergeant Parker with the intent to prevent Sergeant Parker from performing his duty."

[4] The third count states: "On or about March 3, 1998, at the Mohegan Sun Casino in Montville, the accused did commit the crime of Interfering with an Officer in violation of section 53a-167a of the General Statutes, in that he obstructed, resisted, hindered and endangered a member of the Connecticut State Police in the performance of his or her duties."

(1995). Multiple punishments are forbidden only if both conditions are met. Id.

The state argues that the assault on Parker in the second count had been completed and that the third count refers to the slightly later incident when the defendant resisted the two other troopers who were preparing to transport him to the barracks and, thus, the state maintains, the charged offenses arose from different acts. Although the evidence presented at trial appears to support this contention, we are confronted with the threshold issue of whether, in a multiple punishment double jeopardy case, we may consider the evidence presented at trial or whether we are limited to consideration of the charging documents.

It repeatedly has been held that to determine whether two charges arose from the same act or transaction, we look to the information, as amplified by the bill of particulars, if any. *State* v. *Goldson*, 178 Conn. 422, 424, 423 A.2d 114 (1979); accord *State* v. *Devino*, 195 Conn. 70, 75, 485 A.2d 1302 (1985); *State* v. *Williams*, 59 Conn. App. 603, 606–607, 757 A.2d 1191, cert. denied, 254 Conn. 946, 762 A.2d 907 (2000); *State* v. *Patrick*, 42 Conn. App. 640, 645, 681 A.2d 380 (1996); *State* v. *Coleman*, 41 Conn. App. 255, 275, 675 A.2d 887 (1996), rev'd on other grounds, 242 Conn. 523, 700 A.2d 14 (1997); *State* v. *Glover*, 40 Conn. 387, 391, 671 A.2d 384, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996); *State* v. *Smart*, supra, 37 Conn. App. 365; *State* v. *Roy*, 34 Conn. App. 751, 768, 643 A.2d 289 (1994), rev'd on other grounds, 233 Conn. 211, 658 A.2d 566 (1995); *State* v. *Nita*, 27 Conn. App. 103, 113, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992); *State* v. *Marsala*, 1 Conn. App. 647, 650, 474 A.2d 488 (1984).

Also, where an information charges the defendant with two counts that can fairly be construed as the

same act and where the information states the time, date and location, the charged offenses are generally regarded as arising out of the same act or transaction. *State* v. *Flynn*, 14 Conn. 10, 17, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). Indeed, this court has determined that where an information "fails to state the nature of the alleged acts with sufficient particularity to determine whether they are in fact the same act or transaction, we construe the ambiguity in favor of the defendant and conclude that the charges arise out of the same act or transaction for double jeopardy purposes." (Internal quotation marks omitted.) *State* v. *Coleman*, supra, 41 Conn. App. 276.

In the present case, the information alleges that both crimes were committed at the same time and place (i.e., March 3, 1998, at the Mohegan Sun Casino in Montville). For purposes of this analysis, the sole distinction between the two counts is that the second count specifies Parker as the victim, and the third count does not name the particular member of the state police who was the victim. It is clear, however, that both counts charge the defendant with interfering with a state police officer who was trying to perform the officer's duties at the Mohegan Sun Casino in Montville on March 3, 1998. The obvious question is whether one can tell from looking at the information whether Parker, who was the officer whose assault is alleged in count two, was the unnamed state police member whom count three charges was obstructed, resisted, hindered and endangered in the performance of his or her duties. The absence of a bill of particulars complicates our inquiry; see *State* v. *Mezrioui*, 26 Conn. App. 395, 402 n.4, 602 A.2d 29, cert. denied, 224 Conn. 909, 617 A.2d 169 (1992); and the information is, at best, ambiguous.

Although no case explicitly says that the evidence presented at trial may not be considered in determining

whether two crimes arose from the same transaction, that fact is certainly implied in the cases that hold that the court looks to the information and the bill of particulars. Once before, in *State* v. *Flynn*, supra, 14 Conn. App. 16, the state urged us to consider the evidence presented at trial in determining whether the charges arose from the same act or transaction. We declined the state's invitation then, and, in light of the well established precedent requiring us to consider the information and the bill of particulars, we see no reason to deviate from that position.

Our review of the information leaves us unable to determine whether the charges arose from the same act or transaction, and, therefore, we resolve the ambiguity in the defendant's favor and conclude that the charges did so arise.

As mentioned previously, however, there is no double jeopardy violation unless the crimes are also the "same offense" for double jeopardy purposes. In *Flynn*, this court held that the crime of interfering with an officer is a lesser included offense of assault of a peace officer. Id., 18. "For purposes of double jeopardy, a greater offense is the 'same offense' as any lesser included offense, and vice versa, *Brown* v. *Ohio*, 432 U.S. 161, 168, 97 S. Ct. 2221, 2226–27, 53 L. Ed. 2d 187 (1977)"; *Boyd* v. *Meachum*, 77 F.3d 60, 63 (2nd Cir. 1996); and, therefore, the imposition of multiple punishments for both these offenses violates the double jeopardy prohibitions of the state and federal constitutions.

According to *State* v. *Chicano*, 216 Conn. 699, 721–25, 584 A. 2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), the remedy in a case such as this is to combine the conviction on the lesser included offense with the conviction on the greater and to vacate the sentence on the lesser included offense. Accordingly, the defendant's convic-

tion of interfering with an officer must be combined with his conviction of assault of a peace officer, and his sentence for interfering with an officer must be vacated.

## II

The defendant next claims that the court interfered with his right to present a defense because it improperly found that (1) he failed to give timely notice of his affirmative defense of mental disease or defect[5] and (2) his family members violated a sequestration order, thus barring them from testifying. We are not persuaded.

## A

Practice Book § 40-17 requires a defendant who intends to rely upon the affirmative defense of mental disease or defect to notify the prosecuting authority of such intention, in writing, not later than forty-five days after the first pretrial conference.[6] If a defendant does not comply with this rule, the affirmative defense may not be raised. In *State* v. *Lovelace*, 191 Conn. 545, 549, 469 A.2d 391 (1983), cert. denied, 465 U.S. 1107, 104 S. Ct. 1613, 80 L. Ed. 2d 142 (1984), our Supreme Court recognized that the court has discretion to exclude testi-

---

[5] General Statutes § 53a-13 (a) provides: "In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law."

[6] Practice Book § 40-17 provides: "If a defendant intends to rely upon the affirmative defense of mental disease or defect or of extreme emotional disturbance at the time of the alleged crime, the defendant shall, not later than forty-five days after the first pretrial conference in the court where the case will be tried or at such later time as the judicial authority may direct, notify the prosecuting authority in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this rule, such affirmative defenses may not be raised. The judicial authority may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate."

mony offered by the defendant on the issue of his mental state if he has not complied with the notification requirement of the rules of practice.

In this case, the defendant never gave the state written notice of his intent to use the affirmative defense of mental disease or defect. In fact, it was not until after trial had commenced that the defendant himself interrupted the proceedings claiming that he wanted to present a mental disease or defect defense.

The rule requiring a forty-five day notice is not a mere technicality. When timely notice is given, the state has the opportunity to order an examination by its own expert. When, as here, a defendant raises a mental disease or defect defense midtrial, the state is deprived of this opportunity.

A court may, however, for good cause shown, allow late filing of the notice or grant additional time for the parties to prepare. In this case, the court gave the jury an extended recess to allow the defendant to contact witnesses to explore the viability of his claim of mental disease or defect. The defendant was not able to contact some of his proposed witnesses, and one whom he did reach stated that she would not support his defense and, in fact, would testify to the contrary.[7] In addition, upon inquiry from the court, defense counsel replied to the effect that he did not believe that a valid defense of this sort existed.

Under the circumstances of this case, we conclude that the court did not abuse its discretion in precluding the defendant from asserting the affirmative defense of mental disease or defect.

## B

The defendant also claims that the court improperly precluded his family members from testifying because

---

[7] This prospective witness was a department of correction psychologist.

they were present in court in violation of a sequestration order that the court entered at defense counsel's request.[8]

The defendant intended to have his mother and girlfriend testify in support of his mental disease or defect defense.[9] The court noted that both prospective witnesses entered the courtroom while the state's first witness was on the stand and remained in the courtroom during the testimony of the state's second and third witnesses. The court ruled that the defendant's mother and girlfriend could not testify because their presence violated the sequestration order.

The purpose of a sequestration order is to ensure that a fair trial takes place by preventing witnesses from shaping their testimony to agree with the testimony of other witnesses. *State* v. *Sherman*, 38 Conn. App. 371, 413, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). "The remedy for such a violation [of a sequestration order] rests in the trial court's discretion . . . . We acknowledge, however, that, under particular circumstances, the unjustified exclusion of a witness' testimony can amount to a deprivation of the defendant's right to present a defense. . . . If an impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . The standard for determining whether a nonconstitutional error is harmless is that [t]he defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Citations omitted; internal quotation marks omitted.) *State* v. *Nguyen*, 52 Conn. App. 85, 92–93,

---

[8] Practice Book § 42-36 provides: "The judicial authority upon motion of the prosecuting authority or of the defendant shall cause any witness to be sequestered during the hearing on any issue or motion or during any part of the trial in which such witness is not testifying."

[9] The defendant suggests that his mother might also have testified about events at the casino.

726 A.2d 119 (1999), aff'd, 253 Conn. 639, 756 A.2d 833 (2000).

In the present case, even if we assume arguendo that the court's decision to preclude the defendant's family members from testifying was improper, it was not of constitutional magnitude. The defendant did not demonstrate that the lay testimony of his mother and girlfriend would have supported his defense, even if he had been permitted to assert it. Thus, we find that the court's decision did not violate any of the defendant's constitutional protections nor was the defendant harmed by the exclusion of the witnesses' testimony. Accordingly, we conclude that the court properly found a violation of its sequestration order and fashioned an appropriate remedy.

### III

Finally, the defendant claims that the court (1) violated his state and federal constitutional rights to counsel by violating a pretrial order and (2) abused its discretion by concluding that no conflict existed between the defendant and his counsel. We are not persuaded.

### A

The defendant contends that the court improperly allowed a public defender to continue representing him contrary to a previous order disqualifying the public defender's office.[10] The record does not support this claim.

At best, the record shows that when the court was considering appointing counsel, it stated that it was not going to appoint attorney Richard Perry, who was a

---

[10] The defendant sought an articulation from the court regarding its ruling on the appointment of the special public defender. The court denied the defendant's motion for articulation, and this court granted the motion for review but denied relief.

member of the public defender's office.[11] No reason for this statement was given, and we have difficulty understanding it because Perry eventually served as standby counsel after the defendant was allowed to proceed pro se. We do not construe this comment by the court as an order disqualifying the public defender's office. Even if it was, a judge may reconsider and reverse an order made by another judge at an earlier stage of the proceedings if he feels that he has just cause to do so. *Breen* v. *Phelps*, 186 Conn. 86, 98–99, 439 A.2d 1066 (1982). This claim has no merit.

B

The defendant also argues that the court abused its discretion when it found that there was no irreconcilable conflict between the defendant and his counsel.

"To safeguard a criminal defendant's right to the effective assistance of counsel, a trial court has an affirmative obligation to explore the possibility of conflict when such conflict is brought to the attention of the trial judge in a timely manner. . . . A trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of the inquiry, however, lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." (Citations omitted; internal quotation marks omitted.) *State* v. *Ruffin*, 48 Conn. App. 504, 513–14, 710 A.2d 1381, cert. denied, 245 Conn. 910, 718 A.2d 18 (1998).

Our review of the record shows that the defendant was difficult to work with and was uncooperative with

---

[11] "You took that position, so I'm appointing a special public defender and you can designate who that's going to be; not you, not Mr. Perry, and not Mr. Morrel. It's got to be somebody you have under the contract."

his counsel. The defendant moved to excuse counsel, alleging a conflict of interest and breakdown in communication. The defendant informed the court of his complaints about his counsel on two occasions. In fact, the court allowed the defendant to proceed pro se with attorney Perry as standby counsel.[12] We conclude that the court did not abuse its discretion by not removing defendant's counsel.

The judgment is reversed in part and the case is remanded with direction to vacate the sentence on count three, interfering with an officer, and to combine the conviction of interfering with an officer with that of assault of a peace officer on count two. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[12] Perry was the third attorney assigned to the defendant.