## STATE OF CONNECTICUT *v.* PAUL FRANCIS
### (AC 21647)

Schaller, Pellegrino and Flynn, Js.

---

Argued December 6, 2001—officially released July 2, 2002

*Michael O. Sheehan,* special public defender, with whom, on the brief, were *Richard A. Reeve* and *Sarita Ordonez,* special public defenders, for the appellant (defendant).

*John A. East III,* assistant state's attorney, with whom, on the brief, were *Timothy J. Liston,* state's attorney, and *Russell C. Zentner,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant, Paul Francis, appeals from the judgment of conviction, following a jury trial, of murder in violation of General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c, burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), burglary in the second degree in violation of General Statutes § 53a-102 (a), arson in the first degree in violation of General Statutes § 53a-111 (a) (1), larceny in the third degree in violation of General Statutes § 53a-124 (a) (1) and criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (1). On appeal, the defendant claims that he was denied his sixth amendment rights (1) to present a defense and (2) to confront a witness against him.[1] We reverse the judgment of the trial court and remand the case for a new trial.

The jury reasonably could have found the following facts. The defendant had a social relationship with U.[2] During the late summer months of 1995, the defendant and U engaged in idle banter while they were fishing. In the fall of that year, the defendant often visited U's apartment, which U shared with his brother. The apartment was part of a three story structure. The victim, who was the mother of U and his brother, occupied another apartment in the building.

Sometime during the fall of 1995, the relationship between the defendant and U began to deteriorate, and

[1] In addition, the defendant claims that (1) the trial court's charge to the jury on circumstantial evidence improperly lowered the state's burden of proof on the element of intent, and (2) the state's repeated reference to his invocation of his right to remain silent and his request for a lawyer violated his fifth amendment right and his right to due process under the fourteenth amendment. Because we conclude that the defendant was deprived of his sixth amendment rights, we need not reach those claims.

[2] On the basis of our decision, we refer to that individual by initial only to protect his statutory right to keep his medical treatment record confidential. See footnote 3.

the defendant became unwelcome at U's residence. The defendant, however, returned to U's residence, and an altercation ensued between U and the defendant. After that event, the two men had no further contact.

In the early morning of January 2, 1996, neighbors were awakened by the sound of a noisy car backing away from U's residence. One of the neighbors, Linda Wierenga, who lived on the third floor of the apartment building, soon smelled smoke. Looking out a window that overlooked the victim's apartment, Wierenga noticed heavy smoke emanating from the apartment. She notified the fire department, then went downstairs and alerted U about the fire.

U attempted to gain access to the victim's apartment, but was unable to enter due to the heat and smoke from the fire. He exited the building and tried to enter the victim's apartment from the outside, but was again unsuccessful. While outside, U noticed that the victim's car was missing. After the fire was suppressed, firefighters discovered the victim's body in her apartment. She was lying face down on the floor with her hands and feet bound behind her back. An autopsy revealed that she likely had died from suffocation by means of an object being placed over her face. Further investigation revealed that the fire was caused by a flammable liquid that had been spread in the victim's apartment.

On the evening of January 5, 1996, the Middletown police were notified that the defendant was in the area. The police were seeking the defendant pursuant to an outstanding warrant unrelated to the victim's death. The police arrested the defendant on that warrant, and a search of his person revealed an ignition key to the victim's vehicle. During an interview with a state police detective while in the lockup, the defendant stated that he had been fishing with a prostitute on the night of

the murder. On May 5, 1997, the defendant was arrested and charged with the victim's murder.

At trial, the defendant's principal defense was that a third party, U, had committed the murder. The defendant argued that U was motivated to kill his mother because U and the victim had a discordant relationship due to U's financial troubles and drinking problem. To support that defense, the defendant sought U's confidential treatment record from Connecticut Valley Hospital, where U had received treatment for alcohol abuse in February, 1996, about one month after the murder.[3] The defendant believed that the record might reveal information about the relationship between U and the victim.

Additionally, the defendant sought that information because he further believed that U's treatment record might provide information useful to impeach U, who was to testify as a witness for the state. The defendant sought to discredit U's testimony concerning the defendant by attempting to demonstrate to the jury that U's alcohol consumption affected his ability to perceive and to recall the events about which he testified. Specifically, the defendant sought to impeach both U's ability to retain cognitively the contents of a discussion U and the defendant had on the fishing trip as well as U's ability to later recall a specific comment from that discussion in February, 1996.

The state filed a motion in limine to preclude the disclosure of U's treatment record. The record was subpoenaed, and the court conducted an in camera review of the material. After reviewing the material, the court concluded that it would remain sealed and refused to disclose it to the defendant.

---

[3] U's treatment records are privileged confidential records protected by General Statutes § 17a-688.

Subsequently, the state called U as one of its witnesses at trial. In addition to his other testimony about his relationship and past encounters with the defendant, U testified about the 1995 summer fishing trip. U testified that the defendant had stated that "if he ever did another crime . . . he would burn the place to the ground to cover the evidence." During cross-examination, U testified that he had consumed alcohol on the fishing trip. U also testified that he did not recall the defendant's statement until February, 1996, about six months later. He further stated that he was drinking when he remembered the statement and that his consumption of alcohol would affect his memory. U testified that he did not relate to the police his recollection of the defendant's statement until July 25, 1996, about five months after he recalled it. The defendant was found guilty, and this appeal followed.

On appeal, the defendant claims that his sixth amendment rights to present a defense and to confront a witness against him were violated when the court failed to disclose U's treatment record following its in camera review. Specifically, the defendant advances two distinct sixth amendment arguments. First, he argues that was deprived of his right to present a defense because he was not allowed access to information that supported his defense. Second, he asserts that he was not allowed to impeach a witness against him.[4]

We first set forth the standard of review for the defendant's claim. "Our standard of review for the refusal to disclose privileged records is abuse of discretion." *State v. Springmann*, 69 Conn. App. 400, 420, 794 A.2d 1071, cert. denied, 260 Conn. 934, 802 A.2d 89 (2002). "Discre-

[4] We note with regard to sixth amendment claims that although an appellant sometimes will combine the rights afforded under that amendment and claim, for example, that he was deprived of his right to present a defense *because* he was not allowed to cross-examine a witness, that is not the case in the present appeal. The defendant, as previously explained, advances two distinct sixth amendment arguments.

tion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *State* v. *Olah*, 60 Conn. App. 350, 354, 759 A.2d 548 (2000). "Access to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Internal quotation marks omitted.) *State* v. *Slimskey*, 257 Conn. 842, 856–57, 779 A.2d 723 (2001).

After our own thorough review of U's treatment record, we are persuaded by the defendant's argument that the court abused its discretion and improperly refused to disclose the record. Because we are persuaded that the failure to disclose the record impaired both the defendant's rights to present a defense and to impeach a witness, we will address each claim in turn. We note at the outset that we will not divulge specific information or the details of what our in camera review has revealed because U may decide to preclude the disclosure of his record at the new trial. See *State* v. *Olah*, supra, 60 Conn. App. 355. Consistent with the procedure for disclosing confidential documents, U must consent to the disclosure and waive his privilege so that his treatment record may be disclosed to the defendant. See id.; see also *State* v. *Slimskey*, supra, 257 Conn. 855. If such waiver is not provided, U's record will not be disclosed and his testimony may be stricken. See *State* v. *Olah*, supra, 355. We therefore state only

that which is necessary to illuminate our decision in order to protect U's right to keep his privileged records confidential. See id.

## I

The defendant first argues that he was deprived of his right to present a defense because he was not allowed access to information that supported his defense. He asserts that he should have been given access to U's treatment record to establish the defense that a third party, U, was responsible for killing the victim.

We first note the law relevant to that argument. "After performing an in camera inspection, the trial court is required to release only information that is material and favorable to the defense. . . . Favorable evidence is that evidence which . . . might have led the jury to entertain a reasonable doubt about . . . guilt . . . and this doubt must be one that did not otherwise exist. . . . On the other hand, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[5] (Internal quotation marks omitted.) Id., 354–55.

With regard to the defendant's third party culpability defense, we conclude that U's treatment record should have been disclosed because it contains information about U's state of mind that is favorable and material to the defense.[6] In denying the defendant access to that

---

[5] We note that we apply that test to the material sought in the present appeal despite the fact that it appears that *Olah* concerned material sought for impeachment. We do so because *Olah* does not explicitly state what material was sought and because we conclude that this portion of the *Olah* test is a generally applicable standard that can be applied to various materials that are sought in the in camera context.

[6] Specifically, we refer to the Connecticut Valley Hospital Admission Psychiatric Evaluation, page two, and the Connecticut Valley Hospital Brief Stay Psychosocial Assessment and Summary, page three.

information, the court restricted his right to present a defense because it prevented his acquisition of evidence that he could use to establish third party culpability.[7] Because we have determined that the treatment record contains information that was favorable and material to the defendant's third party defense, we conclude that the court abused its discretion by failing to disclose the record to him after the in camera review.

Having determined that the court abused its discretion, we now turn to an analysis of whether its decision harmed the defendant. We conclude that the court's failure to disclose U's treatment record was harmful to the defendant. With regard to a defendant's right to present a defense, we have stated that when the "impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mincewicz*, 64 Conn. App. 687, 696, 781 A.2d 455, cert. denied, 258 Conn. 924, 783 A.2d 1028 (2001). In the present case, the defendant sought to prove that U killed the victim. The defendant's theory centered on the alleged stressful relationship that U had with the victim, his mother, which was the product of U's unemployment and drinking. In light of that defense, we cannot conclude that the court's denial of access to the information in U's record was harmless beyond a reasonable doubt.

## II

The defendant also argues that he was not allowed to impeach a witness against him. He asserts that he should have been given access to U's treatment record

---

[7] We note that although we conclude that the defendant is entitled to U's treatment record, we do not reach the issue of whether the material in the record will be admissible at a new trial. That is a separate issue and must be decided by the new trial court. Our decision goes only so far as to determine that the defendant's right to present a defense, guaranteed by the sixth amendment, entitles him to access to the treatment record.

to enable him adequately to cross-examine and to confront U, who testified as a witness against him.

We first note the law relevant to that argument. "A criminal defendant has a constitutional right to cross-examine the state's witnesses, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. . . . Thus, in some instances, otherwise privileged records . . . must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility." (Citations omitted.) *State* v. *Slimskey*, supra, 257 Conn. 853–54.

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences." (Internal quotation marks omitted.) Id., 855. "[T]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation." (Internal quotation marks omitted.) Id., 856–57.

Our review of U's record also reveals that it should have been disclosed for impeachment purposes because it contains information about U's alcohol consumption during relevant periods.[8] The information is probative of U's ability to observe, recollect and narrate

---

[8] With regard to events in 1995, we refer specifically to the Connecticut Valley Hospital Admission Nursing Assessment, page one, and the Dutcher Treatment Center Request for Psychiatric Consult, page one. With regard to events in February, 1996, we refer to the treatment record generally.

the events about which he testified. The court's refusal to disclose that information to the defendant after the in camera review violated his right to confrontation because it limited his right to impeach U's testimony and to attack his credibility.

We note, moreover, that the violation was exacerbated because U did not tell anyone about the comment that the defendant allegedly made during the 1995 fishing trip until a significantly later date. Therefore, U's testimony required him not only to clearly register the remark in the first instance, but also to recall it about six months later. In that situation, the court's decision deprived the defendant of his right to cross-examine U with regard to both aspects. Because we have determined that the treatment record provides information that the defendant could use to impeach a witness against him and to attack that witness' credibility, we conclude that the court abused its discretion by failing to disclose the record to the defendant after its in camera review.

Having determined that the court also abused its discretion with regard to the defendant's ability to impeach U, we again turn to an analysis of whether that decision harmed the defendant. We conclude that the court's failure to disclose U's treatment record was harmful to the defendant. In terms of a defendant's ability to impeach a witness, our Supreme Court has stated that "[t]he correct inquiry for identifying harmless constitutional error is to ask whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. . . . Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or con-

tradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Internal quotation marks omitted.) Id., 859. Here again, the burden rests with the state to show that the error was harmless beyond a reasonable doubt. See id.

In the present case, we conclude that the failure to disclose the treatment record was harmful. We note that U was an important witness for the state. His testimony described his deteriorating relationship with the defendant, the fight they had and, most importantly, what the defendant allegedly said during the 1995 fishing trip about burning down any future crime scenes. Because the two men were the only ones on the trip, no other witness provided similar testimony about what the defendant said. Additionally, although the court did allow the defendant to probe U's drinking patterns to some degree, we cannot construe that cross-examination as adequate in light of the information the court kept from the defendant by refusing to disclose the treatment record. Although the state's case was sound, we are not persuaded that it was so overwhelming so as to accommodate the court's improper ruling. In light of that, we cannot say that the error was harmless beyond a reasonable doubt. We therefore conclude that the failure to disclose the treatment record was harmful error.

The court's failure to disclose U's treatment record following its in camera review was an abuse of discretion that deprived the defendant of his sixth amendment rights to confront a witness against him and to present a defense. The refusal to disclose was harmful to the defendant.

The judgment is reversed and the case is remanded for a new trial, at which the treatment record must be

disclosed to the defendant contingent on a waiver of the privilege and in accordance with the disclosure procedures specified herein.

In this opinion the other judges concurred.