******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE V.*
(AC 35836)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Argued February 10—officially released May 26, 2015*

(Appeal from Superior Court, judicial district of Hartford, geographical area number twelve, Fuger, J.)

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Adam B. Scott*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jose V., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly considered his handwritten letter, which included incriminating remarks,[1] when it imposed his sentence. Specifically, the defendant claims that the court's consideration of the letter (1) violated his constitutional privilege against self-incrimination and deprived him of his right to the effective assistance of counsel, and (2) was improper because the contents were protected by the attorney-client privilege. The defendant requests this court to exercise its supervisory authority to remand the matter to the trial court for resentencing by another judge without consideration of his letter. We disagree with all of the defendant's claims and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant is a native of Ecuador. He was married to the grandmother of the victim and lived in New York, but he visited the victim and her family in Connecticut on weekends. In October, 2009, when the victim was four years old, the defendant inappropriately touched her during one of his visits. The victim disclosed the incident to her mother, who contacted the Manchester Police Department. The defendant provided a statement to Detective A.J. DeJulius, in which he denied making inappropriate contact with the victim and explained that she may have mistakenly thought he had done so while he was tickling her.

The defendant was arrested and charged with the offenses for which he was convicted. At trial, the defendant testified on his own behalf and denied ever touching the victim in her vaginal area. He further testified that he occasionally tickled his daughters and the victim, but that he never touched the victim inappropriately. After the jury returned a verdict of guilty as to both charges, the court scheduled a date for sentencing. During the period of time between the verdict and the sentencing, defense counsel provided a number of letters to the court and to the state's attorney on behalf of the defendant. One of the letters, which had been provided only to the state's attorney, was handwritten in Spanish by the defendant.[2]

At the beginning of the sentencing proceeding, defense counsel stated that he had provided the court, through the clerk's office, with several letters in English that were either handwritten or typed. He further stated that he had received two additional letters that were handwritten in Spanish. Defense counsel explained

that, although he had given copies of those letters to the state's attorney, he had removed the letters in Spanish from the submission to the court because they had not been translated into English, and he did not want "to burden" the court with "something that was incomprehensible."

Defense counsel then represented to the court that he had just that day discerned that one of the handwritten letters in Spanish had been signed by the defendant. He reported that when he made that discovery, he asked the interpreter to translate the contents of the letter, and that he now was making the following request of the court: "[The defendant] wishes not to present that letter to Your Honor, and instead to speak to the best of his ability from his mind and his heart to Your Honor today . . . ." The court interrupted defense counsel, stating that it generally gave the state's attorney the initial opportunity to make a presentation with respect to sentencing.

The state's attorney then proceeded to tell the court that he was "shocked" by the defendant's letter, which he earlier had translated by a different interpreter as soon as he received it. He read certain portions of the letter into the record[3] and concluded with the following remarks: "The defendant took this case to trial, forced this child of tender years to testify about a horrific act that was perpetrated upon her, subjected the child to cross-examination when all the while he knew what the lie detector knew. He . . . knew what [the mother] knew and, essentially and most importantly, he knew what [the victim] knew. . . . He now admits that his denials on the stand were perjury. . . . He admits that he's a liar. And, mainly, Your Honor, as [the victim] testified, he admits that he's a child molester and a sex offender." The state's attorney requested that the court sentence the defendant to twenty-five years incarceration, execution suspended after twelve years, and ten years probation.[4]

In response to the remarks of the state's attorney, defense counsel stated: "I want to say for the record sake that I gave the letter to [the state's attorney] yesterday, fair and square. There's no claim otherwise. I gave him the letter. And I'll also say for the record sake that I didn't know what the letter said. And as a matter of fact, I didn't even know who the letter was from. And I believe there is a second handwritten letter in the packet because my office had put [the] packages together. And the only reason that those two handwritten Spanish language letters were not included in Your Honor's package is that I was embarrassed to give upon the court letters that had not been translated. I thought that was an unfair indulgence. Not that I didn't care about unfairly and, you know, burdening the state with these letters; I just didn't remove them from him."[5]

Defense counsel then told the court that he met with

the defendant after the interpreter translated the contents of the letter, and he asked the defendant if he now was admitting to the offenses. According to defense counsel, the defendant looked at him "quizzically," and he "explained to me that the reason he admitted it in this letter that was intended for Your Honor is that . . . some of the men in the jail told him that if you don't admit what you are convicted of, the judge will give you a harsher sentence." Defense counsel said that the defendant "wrote the letter and accepted responsibility for something that he still professes he did not do, because of jailhouse advice that this was the only way to try and get leniency from the judge. . . . [T]he reason he wrote this letter to you is bad jailhouse advice. And I'm embarrassed. I'm ashamed that he took jailhouse advice over mine." After offering the court what he considered to be mitigating factors, defense counsel requested that the court sentence the defendant to twenty years incarceration, execution suspended after the mandatory minimum of five years, and ten years probation.

The defendant's wife and daughter, in their brief remarks to the court, asked for leniency on behalf of the defendant. At that point, the defendant exercised his right of allocution. After thanking the court for allowing him to speak "from the bottom of my heart," the defendant made the following statement: "Everything that I wrote in the letter to you, it was not my thoughts and my ideas, but—a lot of people in jail make comments and say things. That when you go in front of the judge and you don't accept your guilt, then the judge turns very severe to you—very harsh to you. Because when the judge sees that you have like an attitude and you don't accept guilt, then the judge is very harsh to you. That was my motivation when I wrote the letter. Not because I felt in my heart that I was guilty. That's all, Your Honor."

In imposing the defendant's sentence, the court made the following remarks: "I'm going to start with the letter that exploded out of the lockup today. The prosecutor expressed quite righteous indignation, as he had every right to do. But there are some comments that I do have to address that the prosecutor I think made and make it clear where this court is coming from. Mendacity, lying on the part of a defendant, may not and will not be used to enhance any punishment. While the prosecutor is correct that the victim and her family had to go through a trial, it is the absolute constitutional right of any defendant, no matter how strong the evidence may be arrayed against him or her, to enter a plea of not guilty and take the case to trial. So the fact that the victim had to testify and go through a trial [and] perhaps suffer additional trauma as a result will not be used to enhance or increase any punishment for the offenses for which this defendant stands convicted."

After a few additional comments, the court returned to the subject of the defendant's letter. The court stated: "And without making any sort of determination as to whether the letter that was presented to this court is true or not, what is clear is that you [the defendant] had no hesitation to lie. Because the letter and your testimony are at complete odds of each other, either you lied on the witness stand or you lied in the letter. So your ability to be honest is in severe doubt here. And while I cannot and will not use your lying to enhance the punishment, I most certainly am free to use it when assessing the credibility of the things that you have told this court. And that has had a very negative effect." The court imposed a total effective sentence of twenty-five years incarceration, execution suspended after ten years, followed by ten years probation with special conditions. This appeal followed.

## I

## A

The defendant's first claim is that the court's consideration of his letter during the sentencing proceeding violated his constitutional privilege against self-incrimination. He argues that the court was precluded from considering the letter's contents because defense counsel, in his initial remarks, told the court that "[the defendant] wishes not to present that letter to Your Honor, and instead to speak to the best of his ability from his mind and his heart . . . ." The defendant claims that his counsel's statement "implicit[ly]" invoked his fifth amendment privilege against self-incrimination. We conclude that the defendant's fifth amendment claim was not preserved by this statement to the court, particularly in light of defense counsel's explanation that he had removed the letters in Spanish from the submission to the court solely because he did not want "to burden" the court with untranslated letters.

Alternatively, the defendant requests review of this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] The state argues that the record is not sufficient in this case to review the defendant's claimed error because it is "devoid of any factual findings relating to any potential fifth amendment violation." The state also contends that his alleged constitutional claim is actually an evidentiary claim masquerading as a violation of his privilege against self-incrimination. In support, the state argues that defense counsel expressly stated that he earlier had given the letter to the state's attorney and did not later seek to retrieve it. Moreover, defense counsel did not object to the use of the letter by the state's attorney at any time during the sentencing proceeding.

Instead of focusing on the first two prongs of *Golding*, we direct our attention to the third prong because it is evident that no violation of the constitutional privilege

against self-incrimination has occurred. "It is not necessary to review all of the prongs of *Golding* as '[i]n the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances.' *State* v. *Golding*, supra, 213 Conn. 240." *State* v. *Smart*, 37 Conn. App. 360, 374–75, 656 A.2d 677, cert. denied, 233 Conn. 914, 659 A.2d 187 (1995).

The fifth amendment to the United States constitution provides in relevant part: "No person . . . shall be *compelled* in any criminal case to be a witness against himself . . . ." (Emphasis added.) U.S. Const., amend. V. "The fifth amendment privilege against self-incrimination is made applicable to state prosecutions through the due process clause of the fourteenth amendment to the United States constitution." *State* v. *Moore*, 293 Conn. 781, 784 n.2, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010). The privilege against self-incrimination applies during sentencing proceedings, even in noncapital cases. *Mitchell* v. *United States*, 526 U.S. 314, 325–27, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999).

In this case, nothing in the record suggests that the defendant was compelled by state action to create the letter or that he was compelled to submit the letter to the state's attorney or the trial court. There is no claim that the incriminating remarks were coerced or otherwise involuntary, nor could the record support such a claim.[7] To the contrary, both defense counsel and the defendant explained that the defendant wrote the letter in the belief that the court would be more lenient in its sentencing if he admitted that he committed the offenses of which he was convicted. He relied on jailhouse advice that he would receive a lesser sentence if he expressed remorse and admitted responsibility for the offenses. Under these circumstances, the defendant cannot establish a clear constitutional violation that clearly deprived him of a fair trial, and thus his claim fails under the third prong of *Golding*.

B

The defendant additionally claims that the court's consideration of his letter during the sentencing proceeding deprived him of his right to the effective assistance of counsel. Again, this alleged constitutional claim was not preserved, and, therefore, the defendant seeks review under *Golding*. Significantly, however, the defendant provides no analysis or applicable case law in support of his claim.[8] It is undisputed that the defendant was represented by counsel throughout the criminal proceeding, including the sentencing procedure on March 22, 2013.

In connection with this claim, the defendant also presents the following alternate argument: "Although

this appeal concerns the waiver of the right to counsel, this court may also review it as a matter of the ineffective assistance of counsel under the sixth amendment. Sentencing is a critical stage of a criminal prosecution during which the defendant is entitled not merely to counsel in name only, but counsel functioning effectively according to objective reasonable standards."

"Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible. The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency. . . . [O]n the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review to situations in which the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 151–52, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006).

In the present case, the defendant claims that "[t]his is one of the exceedingly rare cases where this court may review the effectiveness of counsel in a direct appeal, because defense counsel admitted on the record his failure to vet the defendant's letter before submission. This was not a tactical choice based on the exercise of professional judgment. . . . [T]herefore, the defendant's claims may be resolved as a matter of law upon review of the existing record, without need for further evidentiary development in a habeas corpus trial." We disagree.[9]

Although the record may reflect the actions of defense counsel during the sentencing proceeding, we do not know all of the reasons for those actions. At one point, defense counsel stated that the defendant, relying on advice from fellow inmates, did not follow his advice. The record is silent as to the advice that may have been given by defense counsel that the defendant chose not to follow. All of the relevant circumstances are not known. "Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Greene*, supra, 274 Conn. 152.[10] Accordingly, we decline to review the defendant's claim that he was deprived

of effective assistance of counsel.

## II

The defendant's next claim is that the court's consideration of his letter during the sentencing proceeding was improper because its contents were protected by the attorney-client privilege. This claim was not raised at the trial court and therefore is unpreserved. The defendant requests *Golding* review. We conclude that the defendant has failed to establish an adequate factual record for appellate review, thus leading to the failure of the defendant's claim under the first prong of *Golding*.

The trial court never was presented with the opportunity to make necessary findings of fact and conclusions of law with respect to any alleged violation of the defendant's attorney-client privilege. The basic principles of the attorney-client privilege are undisputed. Not every communication between client and attorney falls within the attorney-client privilege. *Ullmann* v. *State*, 230 Conn. 698, 713, 647 A.2d 324 (1994). "[C]ommunications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. . . . By contrast, statements made in the presence of a third party are usually not privileged because there is no reasonable expectation of confidentiality. . . . The only recognized exceptions to this rule are when the third party was an interpreter, clerk or agent of the client's attorney . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Christian*, 267 Conn. 710, 749, 841 A.2d 1158 (2004).

In the present case, there is nothing in the record that indicates that defense counsel asked the defendant to prepare his letter for the purposes of obtaining legal advice. The letter itself is addressed *to the court*, and a copy was provided to the state's attorney by defense counsel prior to the day of sentencing. After the author of the letter was determined and the contents of the letter were translated by an interpreter, the defendant did not ask the state's attorney to return the letter nor did he object to the use of the letter by the state's attorney during the sentencing proceeding. There are no findings by the trial court regarding the purpose for which the letter was created or whether the defendant intended the letter to be confidential. Accordingly, we agree with the state that the record is inadequate for us to review the defendant's claim under *Golding*.

## III

The defendant's final claim is that this court should exercise its supervisory authority to remand the matter to the trial court for resentencing by another judge without consideration of the defendant's letter. The defendant argues: "Even if this court does not find any violations of constitutional rights or the attorney-client privilege, the use of the incriminatory letter by both the prosecutor and the court created a public perception of

unfairness in the proceedings, which should be redressed through the court's exercise of its supervisory authority over the administration of justice." We decline the defendant's request.

"Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance where these traditional protections are inadequate to ensure the fair and just administration of the courts." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Coward*, 292 Conn. 296, 315, 972 A.2d 691 (2009).

In the present case, the court expressly stated that it was not relying on the contents of the letter to increase the defendant's sentence. We have no reason to doubt the court's representation, and the defendant has provided nothing to persuade us to the contrary. Traditional protections are adequate to safeguard the rights of the defendant and the integrity of the judicial system. This is not a situation that merits the extraordinary remedy requested by the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The letter, written in Spanish, contained his admission to the crimes that he had denied committing when he testified at his criminal trial.

[2] The defendant's native language is Spanish. He speaks and understands English to some extent. At trial and during the sentencing procedure, he was assisted by an interpreter.

[3] The defendant's letter, as translated, provides in relevant part: "Your Honor, I know it could be difficult for you to believe in an inmate's remorse. At this moment, I find myself in a cell remembering all the bad actions that I committed in the past. I am embarrassed of all of them. But what I am most remorseful from the bottom of my heart is this one. Not only because I let my family down because I let down the love that my stepson . . . had towards me by committing this reproachable act towards his daughter [the victim] that has always been like a granddaughter to me."

[4] The maximum sentence that could have been imposed for the two convictions was twenty-five years incarceration, with five of those years being a mandatory minimum sentence.

[5] At a later point during the sentencing proceeding, defense counsel stated that he "suppose[d] some will fault me" for having given the defendant's letter to the state's attorney when he did not know who it was from or the contents of the letter. Defense counsel provided the following explanation for his action: "Because I don't keep secrets from the state's attorneys. I

don't play games with evidence."

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[7] Black's Law Dictionary defines "compel" as "[t]o cause or bring about by force, threats, or overwhelming pressure . . . ." Black's Law Dictionary (9th Ed. 2009) p. 321.

"Voluntary statements remain a proper element in law enforcement. . . . Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable. . . . Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." (Citation omitted; internal quotation marks omitted.) *Oregon* v. *Elstad*, 470 U.S. 298, 305, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985).

[8] "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 353, 913 A.2d 480 (2007).

[9] The defendant relies on *State* v. *Webb*, 238 Conn. 389, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000), in support of his argument that his ineffective assistance of counsel claim can be addressed by this court on direct appeal. *Webb* is inapposite. *Webb* involved an appellate claim that the trial court was obligated to disqualify the public defenders representing the defendant at trial. Id., 413. The defendant argued in *Webb* that his counsel had a conflict of interest due to the fact that a witness for the state was employed by the public defender's office. Id., 414.

In footnote 24 of the opinion, our Supreme Court explained why the ineffective assistance of counsel claim could be reviewed on direct appeal. "We have previously held that claims of ineffective assistance of counsel should be pursued on a petition for a new trial or on a petition for a writ of habeas corpus rather than on direct appeal. . . . In the present case, however, the defendant does not claim ineffective assistance due to attorney incompetence or error. Rather, he claims, based on the undisputed facts in the record, that, as a matter of law, judicial conduct denied him his sixth amendment right to counsel. Because the defendant's claims do not require further evidentiary development, unlike the usual claims of attorney incompetence, as well as some conflict of interest claims . . . but may be resolved as a matter of law upon review of the existing record, we will review them on direct appeal." (Citations omitted.) Id., 414 n.24.

[10] Moreover, to prevail on a claim of ineffective assistance of counsel, the defendant will have to prove both deficient performance *and* prejudice. *Anderson* v. *Commissioner of Correction*, 313 Conn. 360, 376, 98 A.3d 23 (2014), cert. denied sub nom. *Anderson* v. *Semple*,    U.S.    ,    S. Ct.    ,    L. Ed. 2d    (2015). "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) Id. We note that in the present case, the trial court expressly stated that it was not enhancing the defendant's punishment because the defendant had exercised his constitutional right to take the matter to trial or because the contents of the letter were contrary to his testimony at trial.