UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kaniyn Parker

     v.                         Civil No. 17-cv-484-LM
                                  Opinion No. 2019 DNH 046

Robert Hazlewood, FCI Berlin Warden

**O R D E R**

Kaniyn Parker, now an inmate at FCI Petersburg Low in Virginia, filed this petition for a writ of habeas corpus (doc. no. 1) under 28 U.S.C. § 2241 while incarcerated at FCI Berlin in New Hampshire. The petition challenges the career offender sentencing enhancement affecting his federal prison sentence, imposed by the court in his criminal case in the Southern District of Florida in 2004, pursuant to § 4B1.1(a) and § 4B1.2(b) of the United States Sentencing Guidelines ("Guidelines").[1] Parker argues that his three prior state court drug convictions were improperly counted as predicates for that

---

[1] U.S.S.G. § 4B1.1(a) provides, in pertinent part, that a defendant is a "career offender" if he or she "has at least two prior felony convictions" of a "controlled substance offense" or a crime of violence. Id. The Guidelines define a "controlled substance offense," in pertinent part, as the unlawful "manufacture, import, export, distribution, or dispensing of a controlled substance or the possession of a controlled substance with intent to manufacture, import, export, distribute or dispense." Id. § 4B1.2(b).

enhancement.  Before this court is the respondent's motion to dismiss (doc. no. 7), to which Parker objects (doc. no. 8).

## Background

At all relevant times, Parker had three state criminal convictions, in 1993, 1996, and 2003, for drug offenses committed in Connecticut, in violation of Conn. Gen. Stat. § 21a-277.  See Pet. (Doc. No. 1), at 26-27; see also June 7, 2004 Gov't Resp. to Def.'s Obj. to PSR, United States v. Parker, No. 1:03-cr-20859-PCH-3 (S.D. Fla.) ("Criminal Case") (ECF No. 105, at 6).  Conn. Gen. Stat. § 21a-277 criminalizes sales and possession with intent to sell,[2] but does not prohibit mere possession of illegal drugs.  See Conn. Gen. Stat. § 21a-277; see also Labrosciano v. Holder, 515 F. App'x 65, 68 (2d Cir. 2013).

Parker asserts that he entered Alford pleas in each of his Connecticut state drug cases.  See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970) (permitting courts to accept guilty pleas where defendant admits that there is a factual basis for plea,

---

[2]The pertinent Connecticut statute provides:

> No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person . . . any controlled substance . . . .

Conn. Gen. Stat. §§ 21a-277(a)(1) & (b)(1).

but does not admit guilt).  The most recent of those convictions, which resulted from a January 2003 nolo contendere plea, became final upon the conclusion of Parker's direct appeal of that conviction in 2004.  See State v. Parker, No. AC 24195 (Conn. App. Ct. Aug. 31, 2004) ("State Appeal").

In February 2004, in his federal criminal case in the Southern District of Florida, Parker pleaded guilty to one count of conspiracy to import five or more kilograms of cocaine, relating to conduct occurring in May 2003, in violation of 18 U.S.C. § 2, 21 U.S.C. § 952(a), and 21 U.S.C. § 960(b)(1)(B). See Change of Plea, Criminal Case (ECF No. 49, at 6).  Parker faced a statutory mandatory minimum sentence of ten years with the possibility of life imprisonment.  See 21 U.S.C. § 960(b)(1)(B).

The Presentence Investigation Report ("PSR") prepared in Parker's federal criminal case recommended sentencing Parker as a "career offender" under the Guidelines because of his three Connecticut felony drug convictions.  Parker objected to counting two of his Connecticut convictions as controlled substance offenses because he argued that the evidence in the state cases established only that he "possess[ed]" cocaine or marijuana, and he further requested that the federal court grant him a "role" adjustment and a "horizontal" departure (lowering his criminal

3

history category) for sentencing purposes, based on an argument that his criminal history was over-stated. See Pet. (Doc. No. 1), at 17. Considering the parts of the state record cited in the PSR,[3] the court found that all three of Parker's state convictions were properly counted as "controlled substance offense" convictions for purposes of applying the Guidelines career offender enhancement, which required only two such convictions. See June 7, 2004 Sent'g Hr'g Tr., Ex. 2 to June 3, 2005 Gov't Resp. to Pet., Parker v. United States, No. 1:05-cv-20844-PCH (S.D. Fla.) ("First 2255 Motion") (ECF No. 9, at 49). The career offender designation caused Parker's Guidelines offense level to jump from 32 to 37 and set his criminal history category at VI. See Pet. (Doc. No. 1), at 17; June 7, 2004 Gov't Resp. to Def.'s Obj. to PSR, Criminal Case (ECF No. 105, at 6, 7). A three-level reduction for acceptance of responsibility lowered Parker's total offense level to 34, which yielded a Guidelines range of 262 to 328 months. See Pet. (Doc. No. 1), at 17. The court then sentenced Parker to 262 months in prison, the bottom of that range, finding that although it was "unfortunate,"

---

[3]This court lacks access to the PSR and to the specific parts of the state record cited in the PSR upon which the federal court relied in sentencing Parker as a career offender, and for that reason this court cannot be certain which parts of the state record were summarized in the PSR and cited by that court when it sentenced Parker as a career offender.

4

"pretty stiff," and "more than sufficient" to punish him for his past criminal activity, it would "serve[] as a deterrent for any future activity."[4]  June 7, 2004 Sent'g Hr'g Tr., Ex. 2 to June 3, 2005 Gov't Resp., First 2255 Motion (ECF No. 9, at 51-52); see also June 8, 2004 Judgment, Criminal Case (ECF No. 110).  Parker did not appeal his conviction or sentence, which became final before the Supreme Court made the Guidelines advisory in January 2005 in United States v. Booker, 543 U.S. 220 (2005).

Parker filed a timely motion under 28 U.S.C. § 2255 in March 2005, claiming ineffective assistance of counsel and challenging his career offender designation as unsupported by evidence that he had committed any drug crimes other than simple possession. See Pet., First 2255 Motion (ECF No. 1), at 12, 13.  That § 2255 motion was dismissed in November 2005.  See Nov. 16, 2005 Order, id. (ECF No. 26).  Parker unsuccessfully moved for relief from that judgment.  See June 24, 2010 Mot., id. (ECF No. 66); see also Aug. 4, 2010 Order, id. (ECF No. 73).

Parker then filed another § 2255 motion in the Southern District of Florida.  See Oct. 9, 2013 Mot., Parker v. United States, No. 13-cv-23635-PCH (S.D. Fla.) (ECF No. 1); Mar. 21,

_____

[4]The record before this court suggests that without the career offender enhancement, Parker's Guidelines sentence range could have been about seven to ten years shorter, assuming a Criminal History Category V and an offense level of 29.

2014 Am. Mot., id. (ECF No. 18, at 15).  The magistrate judge screening that filing concluded that, based on Eleventh Circuit precedent, Parker's claim of being innocent of the Guidelines career offender enhancement did not allow him to avoid the restriction on unauthorized successive § 2255 motions.  See Apr. 14, 2014 R&R, id. (ECF No. 20).  The district judge approved the magistrate judge's recommendation to dismiss Parker's petition for lack of jurisdiction as an unauthorized successive § 2255 motion.  See May 16, 2014 Order, id. (ECF No. 22).  The Eleventh Circuit denied Parker's application for leave to file a successive § 2255 motion in June 2014.  See In re Parker, No. 14-12489-A (11th Cir. June 30, 2014).

In the instant § 2241 petition, Parker argues that none of his prior convictions were career offender predicates.  He asserts that the 2003 Connecticut conviction should not have counted because it was pending on appeal in the Connecticut state courts at the time of his federal sentencing (hereinafter "Claim 1").  Parker also maintains his "actual innocence" of Connecticut crimes other than drug possession and cites Mathis v. United States, 136 S. Ct. 2243 (2016), in connection with that claim (hereinafter "Claim 2").

**Discussion**

I.    Savings Clause Jurisdiction

Pursuant to 28 U.S.C. § 2255, the trial court generally has exclusive jurisdiction over a petitioner's post-conviction motions challenging the validity of his conviction or sentence. Section 2255(e), known as the "savings clause," preserves a limited role for the court in the district where a federal inmate is in prison to consider a § 2241 petition challenging the validity of his incarceration. See United States v. Barrett, 178 F.3d 34, 49 (1st Cir. 1999). The savings clause provides, in pertinent part:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255], shall not be entertained . . . unless it . . . appears that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e) (emphasis added). Parker, an FCI Berlin inmate at the time his § 2241 petition was filed, seeks to invoke this court's "savings clause" jurisdiction under § 2255(e).

While the First Circuit has not provided examples of all circumstances where savings clause jurisdiction might arise,[5] the

---

[5]In Sustache-Rivera v. United States, 221 F.3d 8, 16 & n.14 (1st Cir. 2000), the court noted that savings clause jurisdiction has been found in cases where petitioners have asserted statutory interpretation claims based on new Supreme Court precedent, previously unavailable to them, that changed the law in the circuit and narrowed the scope of a criminal statute in a manner

court has clarified that Section 2255's "adequacy and effectiveness must be judged ex ante." Trenkler v. United States, 536 F.3d 85, 99 (1st Cir. 2008). "[P]ost-conviction relief can be termed 'inadequate' or 'ineffective'" for purposes of invoking the savings clause "only when, in a particular case, the configuration of section 2255 is such 'as to deny a convicted defendant any opportunity for judicial rectification.'" Id. (citation omitted). The Trenkler court further observed that courts have allowed access to the savings clause in only "rare and exceptional circumstances, such as those in which strict adherence" to the statutory limits on access to relief under section 2255 "would result in a 'complete miscarriage of justice.'" Id. (citation omitted). This court's inquiry into whether it has savings clause jurisdiction thus addresses whether "the configuration of section 2255" has effectively denied Parker any opportunity for judicial review of his claims, and whether

---

that would have rendered them not guilty of the offense of which they were convicted. See id. (citing cases). But see McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1087 (11th Cir.) (en banc) (savings clause jurisdiction unavailable despite adverse circuit precedent that has changed after first 2255 motion, as petitioner "could have tested the legality of his detention by requesting that we reconsider our precedent en banc or by petitioning the Supreme Court for a writ of certiorari"), cert. denied, 138 S. Ct. 502 (2017); Prost v. Anderson, 636 F.3d 578, 588 (10th Cir. 2011) (intervening changes in statutory interpretation cannot render § 2255 inadequate or ineffective)).

manifest injustice has resulted, warranting relief under the savings clause. Id.


II.  Claim 1 -- Timing of Direct Appeal of 2003 Conviction

Parker's first claim is that his 2003 conviction did not qualify as a "prior conviction," as his direct appeal of that conviction was pending at the time of his sentencing in the federal case. Parker's counsel unsuccessfully argued a related claim at Parker's federal sentencing hearing: that the court should not count the 2003 conviction as a career offender predicate because it could be reversed on appeal. See June 7, 2004 Sent'g Hr'g Tr., Ex. 2 to June 3, 2005 Gov't's Resp. to Pet., First 2255 Motion (ECF No. 9, at 49)

Parker has not pointed to any change in the law in his favor, or anything in the operation of § 2255 that has changed since the date he was sentenced, which might show that he could not raise the issue of the timing of his state appeal at an earlier stage of the case. In fact, Parker cites cases predating his federal conviction in support of Claim 1. See, e.g., Pet. (Doc. No. 1) at 28 (citing, inter alia, United States v. Lippner, 676 F.2d 456, 467 (11th Cir. 1982)). The configuration of section 2255 does not appear to have denied Parker an opportunity to seek review of that claim in his direct appeal or initial

9

section 2255 motion.  Furthermore, the state conviction at issue was ultimately affirmed, see State Appeal, undermining a claim of a miscarriage of justice based on the timing of that appeal. This court thus lacks savings clause jurisdiction over Claim 1.

III. Claim 2

Parker next argues, citing Mathis, that the career offender enhancement was misapplied in his case, as, he contends, the facts underlying his state court convictions did not amount to evidence that he intended to sell drugs.  In other words, he claims to be innocent of being a career offender, as simple possession does not fit the Guidelines definition of a "controlled substance offense."

A.    Actual Innocence

While the First Circuit has not addressed the question of whether savings clause jurisdiction could arise from an actual innocence claim challenging an enhanced sentence that is below the statutory maximum, the First Circuit has discussed what would have to be established to litigate such a claim in an initial section 2255 motion, if a claim of actual innocence could be deemed sufficient to waive a procedural default:  "'[A]ctual innocence'" in such circumstances would apply "'in the context of

10

habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes.'" Damon v. United States, 732 F.3d 1, 5 (1st Cir. 2013) (citation omitted). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (citation and internal quotation marks omitted).

Parker's actual innocence claim focuses exclusively on one of his three convictions, in arguing that the evidence relating to his 1996 plea did not amount to "concrete evidence" that he was selling drugs. Pet. (Doc. No. 1), at 36. As Parker must impugn at least two of his three prior convictions to present a colorable actual innocence claim, his exclusive focus on his 1996 plea misses that mark. And contrary to a premise of Parker's argument regarding "concrete evidence," an individual's intent to sell drugs is a matter susceptible of proof by circumstantial evidence in Connecticut, see State v. Clemons, 168 Conn. 395, 401, 363 A.2d 33, 37 (1975).[6] Because Parker has not made a

---

[6]Parker does not dispute the facts drawn from the state record, cited in his federal criminal case, which could support a reasonable inference that his 1993, 1996, and 2003 pleas were career offender predicates. See, e.g., June 8, 2004 Gov't Resp. to Def's Obj. to PSR, Criminal Case (ECF No. 105), at 6

11

colorable claim of actual innocence as to at least two of his three drug-trafficking convictions, his actual innocence claim fails to provide a foundation for an exercise of savings clause jurisdiction.

B.    Mandatory Guidelines Issue

Liberally construed, Claim 2 in Parker's petition asserts that, under Mathis, the sentencing court erred in failing to restrict its examination of his prior convictions to an examination of the elements of Conn. Gen. Stat. § 21a-277, when it found Parker to be a career offender under the Guidelines. See Pet. (Doc. No. 1) at 26.  The merits of Parker's Mathis claim have not been briefed and do not appear straightforward.[7]

─────────────

("defendant does not contest that his 1993 conviction for sale of a hallucinogen/narcotic clearly qualifies as a conviction to be counted in a career offender analysis"); June 7, 2004 Sent'g Hr'g Tr., Ex. 2 to June 3, 2005 Gov't Resp. to Pet., First 2255 Motion (ECF No. 9, at 49) (remaining two convictions counted as career offender predicates, as 1996 conviction for "sale of controlled substance" involved evidence that there were thirteen baggies of crack cocaine and about $800 in Parker's car; and 2003 conviction arose from evidence that there were seventeen dime bags of cocaine and two baggies of marijuana in his car); see also State v. Parker, No. AC 24195 (Conn. App. Ct. Aug. 31, 2004) (2003 conviction arose from Parker's plea of nolo contendre to "possession of a controlled substance with the intent to sell" in violation of Conn. Gen. Stat. § 21a-277).

[7]Conn. Gen. Stat. § 21a-277 includes a list of prohibited acts that do not categorically match the definition of a controlled substance offense under the Guidelines.  See United States v. Savage, 542 F.3d 959, 964-65 (2d Cir. 2008).  Section

This court need not issue an order on the merits of that claim unless it has savings clause jurisdiction; and respondent argues that, following Mata v. Warden, No. 17-cv-92-JL, 2018 U.S. Dist. LEXIS 31656 (D.N.H. Jan. 29, 2018) (ECF No. 9), R&R approved 2018 U.S. Dist. LEXIS 31116 (D.N.H. Feb. 26, 2018) (ECF No. 10), this court should dismiss Parker's Mathis claim for lack of jurisdiction. The respondent's reliance on that case, however, is misplaced, as Mata involved a challenge to an advisory, post-Booker Guidelines sentence. There is some authority from other jurisdictions suggesting that this court could exercise savings clause jurisdiction in a case like Parker's where the Mathis claim challenges the misapplication of

---

21a-277's list has been alternately characterized as a list of separate elements or as a list of separate means. See United States v. Epps, 322 F. Supp. 3d 299, 306 (D. Conn. 2018) (recognizing issue to be close question, but holding that list of prohibited acts under § 21a-277 is indivisible list of means). But see Hancock v. United States, No. 3:14-CV-1751 (VAB), 2019 WL 418093, at *14, 2019 U.S. Dist. LEXIS 16022, at *36-*37 (D. Conn. Feb. 1, 2019) (§ 21a-277 is divisible); United States v. Washington, No. 3:14CV114 EBB, 2014 WL 2566068, at *5, 2014 U.S. Dist. LEXIS 70826, at *16 (D. Conn. May 23, 2014) (§ 21a-277(b) is divisible). Cf. State v. Smart, 37 Conn. App. 360, 367–68, 656 A.2d 677, 682–83 (1995) (finding no double jeopardy violation where defendant was convicted of "sale" and "possession . . . with intent to sell" the same drug, under Conn. Gen. Stat. § 21a-278). The court in Parker's sentencing hearing appears to have made a finding that Parker sold drugs in violation of that statute, which in turn implicates the definition of "sale" under Conn. Gen. Stat. § 21a-240(50), a definition covering acts including "a mere offer to sell," which is not a Guidelines career offender predicate. See Savage, 542 F.3d at 964–65.

13

a Guidelines sentence imposed while the Guidelines were mandatory.[8]  It also appears that, if not for the career offender sentence enhancement, Parker would have been sentenced within a Guidelines range that might well have resulted in his release by now.  It is thus possible that Parker's <u>Mathis</u> claim could be the type of claim challenging a sentence presenting a manifest injustice over which this court may exercise savings clause jurisdiction.  But lacking access to the PSR, pertinent parts of the state record, or any briefing as to the implications of <u>Hill</u>, 836 F.3d at 595; <u>Brown</u>, 719 F.3d at 588; <u>Prost v. Anderson</u>, 636 F.3d 578, 588 (10th Cir. 2011) (adverse precedent does not make filing of first section 2255 motion "inadequate or ineffective");

_____

[8]<u>See</u> <u>Hill v. Masters</u>, 836 F.3d 591, 599 (6th Cir. 2016) (savings clause may provide jurisdiction for claims asserted by "(1) prisoners who were sentenced under the mandatory guidelines regime . . . (2) who are foreclosed from filing a successive petition under § 2255, and (3) when a subsequent, retroactive change in statutory interpretation by the Supreme Court reveals that a previous conviction is not a predicate offense for a career-offender enhancement"); <u>Brown v. Caraway</u>, 719 F.3d 583, 588 (7th Cir. 2013) (petitioners sentenced in pre-<u>Booker</u> era may use the savings clause to challenge misapplication of career offender Guidelines).  But see <u>Bradford v. Tamez (In re Bradford)</u>, 660 F.3d 226, 230 (5th Cir. 2011) ("a claim of actual innocence of a career offender enhancement is not a claim of actual innocence of the crime of conviction and, thus, not the type of claim that warrants review under § 2241"); <u>Gilbert v. United States</u>, 640 F.3d 1293, 1295, 1322-23 (11th Cir. 2011) (en banc) (same, but leaving open whether such claims could be brought where the error in sentencing resulted in detention exceeding statutory maximum).

14

and McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1099 (11th Cir.) (en banc) (same), cert. denied, 138 S. Ct. 502 (2017), this court denies the motion to dismiss that Mathis claim without prejudice, anticipating that it could issue a better-informed decision upon a fuller record.

The court appoints counsel for Parker under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, and takes the jurisdictional issue and merits of the Mathis claim under advisement, pending further briefing from both parties, upon the schedule set forth below.

## Conclusion

For the foregoing reasons, the court directs as follows:

1.  The court dismisses Claim 1, based on the timing of Parker's direct appeal of his 2003 state conviction, for lack of savings clause jurisdiction.

2.  The court denies without prejudice the Warden's motion to dismiss (doc. no. 7) the Mathis claim (Claim 2).

3.  The court appoints counsel for Parker under the CJA and directs the clerk's office to take the steps necessary to effect that appointment.  The court denies Parker's request (doc. no. 9) for an update on the status of his petition, as this Order provides the requested update.

15

4.   The court directs the government, within sixty days of the date of this Order, either to file a motion requesting an evidentiary hearing, or a motion: (1) briefing, specifically, in light of Hill and Brown and other authorities cited in this Order, whether there may be savings clause jurisdiction over Parker's Mathis claims; (2) briefing the merits of Parker's Mathis claims; and, (3) addressing, in the event this court determines that the Mathis claim warrants relief, those issues highlighted in Hill v. Sepanek, No. CV 14-85-ART, 2017 WL 73338, at *9, 2017 U.S. Dist. LEXIS 1916, at *27-*28 (E.D. Ky. Jan. 6, 2017), relating to whether this court may order the government to release the petitioner, or whether his case should be transferred for resentencing.

5.   Petitioner is granted thirty days from the date that motion is filed to file an objection or other response.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

March 19, 2019

cc:  Kaniyn Parker, pro se
     Seth R. Aframe, Esq.

16